UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DENISE PIECHOWICZ, individually and as           REPORT
  Administratrix of the Estate of                     and
  J.P., deceased,                           RECOMMENDATION
                               Plaintiff,

          v.                                  17-CV-00845V(F)

LANCASTER CENTRAL SCHOOL DISTRICT,
PETER F. KRUSZYNSKI,
LANCASTER BOARD OF EDUCATION,
KENNETH GRABER, ESQ.,
PATRICK UHTEG,
WENDY BUCHERT,
WILLIAM GALLAGHER,
MARY MacKAY,
KIMBERLY NOWAK,
MICHAEL SAGE,
MICHAEL VALLELY, PhD,
MARIE PERINI,
JOHN ARMSTRONG, and
ANDREW KUFEL,

                         Defendants.
_____

APPEARANCES:        BROWN CHIARI LLP
                        Attorneys for Plaintiff
                        COLLEEN P. FAHEY, and
                        TIMOTHY MICHAEL HUDSON, of Counsel
                        2470 Walden Avenue
                        Buffalo, New York  14225

                        SUGARMAN LAW FIRM LLP
                        Attorneys for Defendants
                        DANIEL T. CAVARELLO, of Counsel
                        1600 Rand Building
                        14 Lafayette Square
                        Buffalo, New York  14203

## JURISDICTION

On September 8, 2017, this case was referred to the undersigned by Honorable Lawrence J. Vilardo for pretrial matters including preparation of a report and recommendation on dispositive motions.  The matter presently is before the court on Defendants' motion to dismiss (Dkt. 4), filed August 28, 2017.

## BACKGROUND

This action follows the tragic suicide of a middle school student on May 6, 2016. On August 4, 2017, Plaintiff Denise Piechowicz ("Plaintiff" or "Piechowicz"), who sues individually and as administratrix of the estate of J.P., her deceased son ("the deceased" or "J.P."), filed the instant Complaint (Dkt. 1-1) in New York State Supreme Court, Erie County ("state court").  Defendants to this action include Lancaster Central School District ("the School District"), Lancaster Central Middle School Principal Peter Kruszynski ("Kruszynski"), the Lancaster Board of Education ("the Board"), Board President Kenneth Graber, Esq. ("Graber"), Board Vice President Patrick Uhteg ("Uhteg"), Board members Wendy Buchert ("Buchert"), William Gallagher ("Gallagher"), Marie MacKay ("MacKay"), Kimberly Nowak ("Nowak"), and Michael Sage ("Sage") (collectively referred to as "Board Defendants"), School District Superintendent Michael Vallely, PhD ("Dr. Vallely"), School District Assistant Superintendent for Curriculum, Instruction & Pupil Services Marie Perini, EdD ("Dr. Perini"), School District Director of Special Education John Armstrong ("Armstrong"), and School District Director of Secondary Education Andrew Kufel, PhD ("Dr. Kufel").  Plaintiff asserts ten claims for relief including pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, 42

2

U.S.C. § 12101 *et seq.* ("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 701

("Rehabilitation Act"), New York Civil Rights Law § 79-n, New York Estate Powers and

Trusts Law ("N.Y. Est. Powers & Trusts Law") § 5-4.1, the New York Constitution, and

New York common law claims for negligence, gross negligence, and infliction of

emotional distress.  On August 28, 2017, Defendants removed the action to this court

asserting federal question as the basis for jurisdiction under 28 U.S.C. § 1441.

On August 28, 2017, Defendants, in lieu of an answer, filed a motion to dismiss

the Complaint for lack of jurisdiction and for failure to state a claim (Dkt. 4)

("Defendants' Motion"), attaching the Attorney Affidavit of Daniel T. Cavarello, Esq.

("Cavarello Affidavit"), with exhibits A through C (Dkts. 4-2 through 4-4) ("Defendants'

Exh(s). __"), the Memorandum of Law (Dkt. 4-5) ("Defendants' Memorandum"), with an

Appendix (Dkt. 4-6) ("Defendants' Appendix").  On November 13, 2017, Plaintiff filed the

Attorney's Affidavit of Timothy M. Hudson, Esq. (Dkt. 11) ("Hudson Affidavit"), attaching

exhibit A (Dkt. 11-1) ("Plaintiff's Exh. A"), and Plaintiff's Memorandum of Law in

Opposition to Defendants' Rule 12(b) Motion to Dismiss (Dkt. 11-2) ("Plaintiff's

Response").  In further support of dismissal, Defendants filed on November 29, 2017,

the Reply Memorandum of Law on Behalf of Defendants (Dkt. 12) ("Reply

Memorandum").  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion should be GRANTED, and the

Complaint should be DISMISSED as to all Defendants with prejudice and without leave

to amend.

## FACTS[1]

The deceased, J.P., was born in 2002, and as of May 6, 2016, the date of his death, an eighth grade student at Lancaster Middle School ("the School"), in the Lancaster School District ("the School District"). J.P. had been diagnosed with several disabilities affecting his learning including, *inter alia*, Central Auditory Processing Disorder and Learning Disabilities, which Plaintiff alleges substantially limited J.P.'s ability to perform the major life activities of speaking, learning, reading, concentrating, thinking and communicating, as well as limited his ability to comprehend, process, and retain information, and further substantially limited his ability to communicate in that J.P. was unable to recognize emotions communicated by tone and voice and, thus, misunderstood social cues. Because of his learning disabilities, J.P. received special education services at the School, where he allegedly was subjected to continuing, recurring, and unremedied harassment by School employees and administrators including Defendant School Principal Peter F. Kruszynski ("Kruszynski").

Twice during the 2015-16 school year, J.P. was suspended for unspecified conduct, and the suspensions allegedly were imposed without due process, in violation of New York educational law and federal law, as well as School District policies. Beginning in early 2016 through May 6, 2016, J.P. also allegedly was subjected to negligent, harassing, threatening and illegal interrogation and searches and seizures of his person and property, causing J.P. severe emotional distress, embarrassment, intimidation, fear, shame, and scorn. It is specifically alleged that

> On or about May 6, 2016, Defendant Peter F. Kruszynski, improperly and
> negligently interrogated J.P. During this meeting Defendant Peter F. Kruszynsk
> made false statements, harassed, bullied, and intimidated J.P. and secured

---

[1] Taken from the pleadings and motion papers filed in this action.

participation of a police officer with the sole purpose of improperly intimidating and harassing J.P.

Complaint ¶ 31.

Such conduct allegedly caused J.P. serious emotional harm and suffering, and contributed to J.P.'s death by suicide on May 6, 2016.

On August 2, 2016, Plaintiff served a Notice of Claim ("Notice of Claim") (Dkt. 4-4) on the Town of Lancaster and Defendant School District.

## **DISCUSSION**

**1.    Motion to Dismiss**

Defendants move to dismiss the Complaint under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim for which relief can be granted, maintaining the Complaint does not provide sufficient allegations to give notice of the claims against each Defendant under § 1983, Defendants' Memorandum at 3-13, the ADA and the Rehabilitation Act, *id.* at 13-17, New York State's Constitution and Civil Rights Act, the interpretation of which is coextensive with the federal claims, *id.* at 18-20, and New York common law, *id.* at 20-24. Defendants also argue that the state law claims are at least partially barred based on the relevant limitations period under New York's notice of claim requirements and that such claims should be dismissed under Fed.R.Civ.P. 12(b)(1) ("Rule 12(b)(1)") for lack of subject matter jurisdiction. *Id.* at 17. Defendants also maintain some of the damages Plaintiff seeks are not available. *Id.* at 24-25. In opposition, Plaintiff argues although Defendants urge the court to construe the adequacy of the Complaint under federal law, because the Complaint originally was removed to this court after it was filed in New York State Supreme Court, it is New

York's notice pleading standard that applies. Plaintiff's Response at 2-5. Alternatively, Plaintiff asserts that the Complaint satisfies federal pleading requirements to support plausible claims for relief as to each claim. *Id.* at 5-13, 14-18. Plaintiff further maintains none of the claims are even partially barred based on New York's notice of claim rules, *id.* at 13-14, and argues the request for punitive damages is not so speculative as to be implausible. *Id.* at 18. Alternatively, Plaintiff requests leave to file an amended complaint. *Id.* at 1. In further support of dismissal, Defendants argue federal pleading standards apply to the Complaint despite its removal from state court, Defendants' Reply at 1-2, urge the court not to consider a transcript of Plaintiff's testimony at a hearing pursuant to N.Y. Gen. Mun. Law § 50-h, filed by Defendants in opposing dismissal, *id.* at 2-4, reiterate that the Complaint should be dismissed for failing to adequately plead claims under § 1983, *id.* at 4-6, the ADA and Rehabilitation Act, *id.* at 6, the New York State Constitution and Civil Rights Law, *id.* at 7, and New York common law, *id.* at 7-8, the state law claims are at least partially time-barred, *id.* at 6-7, and some of the damages Plaintiff seeks are not available, *id.* at 8-9, maintaining dismissal should be with prejudice and without leave to file an amended complaint. *Id.* at 9-10.

## A.     Failure to State a Claim

### 1.     Applicable Standard

Preliminarily, the court addresses whether in analyzing the sufficiency of a complaint on a post-removal pre-answer motion to dismiss, the pleading standard of New York's Civil Practice Law and Rules ("CPLR"), or Fed.R.Civ.P. 8 ("Rule 8"), applies. Plaintiff argues that because Fed.R.Civ.P. 81 ("Rule 81") specifies federal

procedural rules do not apply to a matter prior to its removal to federal court, the sufficiency of the Complaint served prior to removal should not be evaluated under Rule 8 and the federal "plausibility" standard required by *Ashcroft v. Iqbal*, 566 U.S. 662 (2009), but under New York's notice pleading standard.  Plaintiff's Response at 2-5.  In support of this argument, Plaintiff analogizes district court cases within the Second Circuit where state pleading standards were applied in the context of an alleged fraudulent joinder.  *Id.* at 4-5.  In opposition, Defendants maintain that case law within the Second Circuit is replete with cases where the federal standard is applied to motions seeking dismissal of removed actions for failing to state a claim, Defendants' Reply at 1-2, asserting that Plaintiff's attempt to draw an analogy to a "fraudulent joinder" is without merit as it pertains only to whether a non-diverse party has been joined so as to defeat diversity jurisdiction.  *Id.*

Insofar as Plaintiff maintains that "Rule 81 makes expressly clear that no repleading need be made following removal," Plaintiff's Response at 4, a plain reading of the Federal Rules of Civil Procedure establishes that "[a]fter removal, repleading is unnecessary *unless the court orders it*." Fed.R.Civ.P. 81(c)(2) (italics added).  Further, although there is no case on point from the Second Circuit, at least one district court within the Second Circuit has considered this issue, noting that "[a]lthough Plaintiff's pleadings were originally filed in state court, federal pleading standards apply post-removal," *Rubeor v. Town of Wright*, 191 F.Supp.3d 198, 203 n. 2 (N.D.N.Y. 2016) (quoting Fed.R.Civ.P. 81(c)(1) and (2); and citing *Armstrong v. Shirvell*, 596 Fed.Appx. 433 (6th Cir. 2015), *cert. denied*, __ U.S. __, 136 S.Ct. 403 (2015)), and dismissed claims that were not sufficiently plausible under Rule 12.  *See also Dunbar v. Wells*

*Fargo Bank, N.A.*, 709 F.3d 1254, 1257 (8th Cir. 2013) (holding in action filed in state court and removed based on diversity, federal pleading standards apply to state substantive law in determining whether complaint states a claim under state law).

Nor does the court find persuasive Plaintiff's attempt to analogize a motion to dismiss for failure to state a claim to a motion for fraudulent joinder.  *See* Plaintiff's Response at 4-5 (observing that "[a]nalogously, the district courts of the Second Circuit apply New York State court pleading rules to 'fraudulent joinder' motions."). Significantly, in *DNJ Logistics Group, Inc. v. DHL Express (USA), Inc.*, 727 F.Supp.2d 160, 164-68 (E.D.N.Y. 2010), on which Plaintiff relies in support of this novel argument, *see* Plaintiff's Response at 4-5, the district court restricted its review to whether it was possible the plaintiff had stated a claim under state law against a non-diverse defendant so as to determine, under state law, whether such defendant had been fraudulently joined so as to avoid diversity jurisdiction in federal court.  In other words, a determination that the subject party had not been fraudulently joined would establish jurisdiction was not available in federal court, underscoring that the joinder determination was properly based on state, rather than federal, law.  In contrast, because the basis for jurisdiction in this court in the instant case is federal question given that Plaintiff asserts several claims under § 1983, the ADA, and the Rehabilitation Act, whether the parties are diverse is irrelevant, such that *DNJ Logistics Group, Inc.*, as well as the other, similar cases on which Plaintiff relies, all pertaining to fraudulent joinder, including *Ruiz v. Forest City Enterprises, Inc.*, 2010 WL 3322505, at *3 (E.D.N.Y. Aug. 20, 2010); *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F.Supp. 2d

380, 394 (S.D.N.Y. 2009); and *Kuperstein v. Hoffman-Laroche, Inc.*, 457 F.Supp.2d 467, 471-72 (S.D.N.Y. 2006), do not apply.

Accordingly, the sufficiency of the Complaint is to be determined according to federal law.

### 2.     Plausibility

Having determined the Complaint's sufficiency is to be considered according to federal standards, the court turns to whether the Complaint states a claim for which relief can be granted so as to avoid dismissal under Rule 12(b)(6).  This case is similar to another action pending in this court, to wit, *Spring v. Allegany-Limestone Central School District*, No. 14-CV-00476S ("*Spring*"), brought on behalf of a special education student who committed suicide, against the defendant school district and employees, asserting claims under § 1983, the ADA, the Rehabilitation Act, and New York Civil Rights Law.  On September 30, 2015, Senior District Judge William M. Skretny granted a motion to dismiss the amended complaint filed in *Spring* for failure to state a claim for which relief can be granted.  *Spring v. Allegany-Limestone Central School District*, 138 F.Supp.3d 282 (2105) ("*Spring I*").  On appeal, Judge Skretny's decision was affirmed in part, vacated in part, and remanded for further proceedings.  *Spring v. Allegany-Limestone Central School District*, 655 Fed.Appx. 25 (2d Cir. July 14, 2016).  Given the strong similarities between claims advanced in the instant case and *Spring*, the Second Circuit's review of such claims informs much of the undersigned's recommendation with regard to the instant case.

Fed.R.Civ.P. 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  As such, a pleading is not

required to set forth "detailed factual allegations," but must "provide the 'grounds' of his 'entitlement to relief' [which][2] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (bracketed material added).

A complaint, to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 566 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678); *see Twombly*, 550 U.S. at 570 (the complaint must plead "enough facts to state a claim to relief that is plausible on its face"). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570. A complaint must be dismissed where its claims have not been "nudged . . . across the line from conceivable to plausible. . . ." *Id.*

The "plausibility standard" applicable to a Rule 12(b)(6) motion to dismiss "is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Twombly*, 550 U.S. at 544 (2007), and quoting *Iqbal*, 566 U.S. at 678). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the

---

[2] Unless otherwise indicated, bracketed text has been added.

elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), "a court may consider the complaint as well as 'any written instrument attached to [the complaint][3] as an exhibit or any statements of documents incorporated in it by reference. *Kalyanaram v. American Ass'n of University Professors at New York Institute of Technology, Inc.*, 742 F.3d 42, 44 n. 1 (2d Cir. 2014) (quoting *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001)). A court may also consider "matters of which judicial notice may be taken, [and] documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

### 3.    Matters Extraneous to the Complaint

In opposing dismissal, Plaintiff filed a copy of the transcript of her testimony given at a hearing pursuant to N.Y. Gen.Mun.Law § 50-h ("the 50-h hearing") ("the hearing transcript"),[4] adding the 50-h hearing was referenced in the Complaint as a precondition to suit, and asserting the facts therein are incorporated into Plaintiff's response in opposition to dismissal. Plaintiff's Response at 8 (citing Complaint ¶ 20). Defendants urge the court not consider the hearing transcript, arguing the Complaint references

---

[3] Unless otherwise indicated, all bracketed material has been added.
[4] Plaintiff's Exh. A, filed as Dkt. 11-1.

only the occurrence of the 50-h hearing, but not the hearing transcript such that there is no basis supporting a determination that the hearing transcript is incorporated by reference.  Defendants' Reply at 3.  Defendants further maintain that where, as here, only one party attempts to rely on the transcript for a 50-h hearing, courts have declined to consider such transcript in ruling on a Rule 12(b)(6) motion.  *Id*.

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), and *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)).  Where, however, as here, a document is not incorporated by reference into the complaint, "the court may nevertheless consider it if the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."  *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  *See also Peone v. County of Ontario*, 2013 WL 775358, at *1 (W.D.N.Y. Feb. 28, 2013) ("it is permissible to consider a 50-h hearing transcript where, as here, the Complaint refers to the hearing, the hearing transcript was available to all parties, and all parties relied on portions of the hearing transcript in connection with the subject motion to dismiss.").  In the instant case, however, even assuming the hearing transcript was available to all parties, it is not clear that either Plaintiff or Defendants relied on any of the hearing transcript's statements with regard to Defendants' motion seeking dismissal of the Complaint.  Significantly, even Plaintiff, who in the Complaint references the 50-h hearing, but not the hearing transcript, also does not reference any

specific part of the hearing transcript in responding in opposition to Defendants' motion, such that it cannot be said that Plaintiff relied on the hearing transcript in framing the Complaint. *See Nielsen v. Rabin*, 746 F.3d 58, 65 (2d Cir. 2014) (observing that not every document referred to in a complaint may be considered incorporated by reference, but only documents on which the plaintiff relied in framing the complaint (citing cases)).

Further, although matters of which judicial notice may be taken may be considered in ruling on a motion to dismiss, *Kalyanaram*, 742 F.3d at 44 n. 1, N.Y. Gen. Mun. Law § 50-h(3) specifically provides that "[t]he transcript of the record of an examination shall not be subject to or available for public inspection, except upon court order upon good causes shown . . .." At least one court has relied on § 50-h(3) in declining to take judicial notice of a § 50(h) hearing transcript in ruling on a Rule 12 motion. *See Bissinger v. City of New York*, 2007 WL 2826756, at *2 n. 1 (S.D.N.Y. Sept. 24, 2007) (declining to consider Rule 50-h hearing transcript on motion for judgment on the pleadings).[5] *But see Harley v. The City of New York*, 2016 WL 552477, at * 3 (E.D.N.Y. Feb. 10, 2016) (taking judicial notice of transcript of plaintiff's testimony at Rule 50-h hearing, submitted by defendants on Rule 12(b)(6) motion to dismiss, because such hearing was a matter of public record whose contents were not subject to reasonable dispute, plaintiff did not disavow any of his statements contained therein but appeared to accept the accuracy of such statements, and both parties had relied upon the transcript in their submissions on the motion). Moreover, the principle of

---

[5] The same legal analysis applies to motions to dismiss for failure to state a claim as to motions for judgment on the pleadings. *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) ("The same standard applicable to Fed.R.Civ.P. 12(b)(6) motions to dismiss applies to Fed.R.Civ.P. 12(c) motions for judgment on the pleadings.").

allowing judicial notice to be taken of public records that are integral to a complaint in ruling on a Rule 12(b)(6) motion, is most applicable in cases alleging fraud, and such notice is taken only "in order to determine *what* statements [they] contained' – but '*again not for the truth of the matters asserted.*'"  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (internal citation and quotation marks omitted; bracketed text and italics in original).  Here, that Plaintiff relies on the veracity of her statements in the 50-h hearing transcript in seeking to avoid dismissal cannot be questioned.

Accordingly, the court will disregard the 50-h hearing transcript in considering Defendants' motion to dismiss.

### 4.    28 U.S.C. § 1983

Plaintiff's claims seek damages for alleged violations of constitutional rights pursuant to 42 U.S.C. § 1983 ("§ 1983"), which imposes civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States.  Section 1983, however, is not itself a source of substantive rights but, instead, provides the mechanism by which a plaintiff may seek vindication of federal rights elsewhere conferred.  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).   Here, the Fourth Claim seeks relief for violations of the Fourteenth Amendment.  Defendants argue in support of dismissal of Plaintiff's Fourteenth Amendment claim that although it is not clear from the Complaint whether Plaintiff makes a substantive due process claim or equal protection claim, the Complaint fails to state a claim for either.  Defendants' Memorandum at 3.  Plaintiff's argument in opposing dismissal clarifies Plaintiff asserts both Fourteenth Amendment substantive

and procedural due process claims, as well as an equal protection claim.  Plaintiff's Response at 9-11.

### a.    Personal Involvement

Defendants argue Plaintiff has not identified any act or omission by Defendants Graber, Uhteg, Buchert, Gallagher, MacKay, Nowak, Sage, Vallely, Perini, Armstrong, or Kufel and, thus, has failed to state a claim against such Defendants in their individual capacities, a required elements for a valid § 1983 claim.  Defendants' Memorandum at 2-3, 5.  Plaintiff fails to respond in opposition to this argument, which Defendants reiterate in further support of their motion seeking dismissal for failure to state a claim. Defendants' Reply at 4.

As a prerequisite to relief under § 1983, a plaintiff must establish the defendant was personally involved in the alleged deprivation.  *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) ("To establish a section 1983 claim, 'a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity.'" (quoting *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004))).[6]

> A plaintiff may establish such personal involvement by making any one of five showings (the "*Colon* factors"):
>
>> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

---

[6] Unless indicated otherwise, underlining has been added.

*Id.* (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

Here, as Defendants assert, Defendants' Memorandum at 2-3, 5; Defendants' Reply at 4, the Complaint completely fails to identify any conduct by the individual Defendants Graber, Uhteg, Buchert, Gallagher, MacKay, Nowak, Sage, Vallely, Perini, Armstrong, or Kufel, such that it is impossible for the court to discern the plausibility of any of the asserted claims against such Defendants on this threshold issue.   Rather, the only allegations that could conceivably be construed as pertaining to such Defendants are references to either "Board Members" or "School District employees." *See*, *e.g.*, Complaint ¶ 67 ("At all times relevant hereto, J.P. and defendants Lancaster Central School District and its employee, board members, and agents had a special relationship whereby Defendants had a constitutional duty to protect J.P."). Accordingly, where, as here, Plaintiff fails to allege any facts distinguishing among the various alleged acts so as to attribute specific acts to individual Defendants, the assertions fall below Rule 8's minimum pleading standard.  *See Atuahene v. City of Hartford*, 10 Fed.App'x. 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the Plaintiff's] complaint fails to satisfy [Rule 8's] minimum standard.").  Where "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the compliant has alleged – but has not shown – that the pleader is entitled to relief.  *Iqbal*, 556 U.S. at 679 (citing Fed.R.Civ.P. 8(a)(2)).

The Complaint thus should be dismissed for failing to state a claim against individual Defendants Graber, Uhteg, Buchert, Gallagher, MacKay, Nowak, Sage, Vallely, Perini, Armstrong, or Kufel.[7]

With regard to Defendants School District and School Board, Defendants assert no claim may be sustained against a municipality absent proof of a municipal policy that caused a constitutional tort, and that such policy must be described with factual specificity and not bare and conclusory assertions as Plaintiff has done.  Defendants' Memorandum at 3-4 (citing cases).  In opposition, Plaintiff argues Defendants School District and School Board may be held liable as municipalities because it is alleged that Plaintiff's constitutional deprivation was caused by an official policy or custom. Plaintiff's Response at 11.  In further support of dismissal, Defendants characterize Plaintiff's claims against the School District and the School Board as a "laundry list of conclusory and generalized allegations" that "do not plausibly allege any cause of action" against such Defendants.  Defendants' Reply at 4.

The School District and the School Board are considered "persons' within the meaning of § 1983.  *Spring I*, 138 F.Supp.3d at 291 (citing *Nagle v. Marron*, 663 F.3d 100, 116 (2d Cir. 2011)).  As municipal entities, however, the School District and School Board may not be held liable under a theory of *respondeat superior*; rather, liability will attach only if a violation of Plaintiff's Fourteenth Amendment due process rights was caused by "'government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"  *Id.* (citing *Nagle*,

---

[7] Defendants seek dismissal of the Complaint as against Defendant Kruszynski on other grounds.  *See* Defendants' Memorandum at 3 (observing allegations of specific conduct are made only against Kruszynski).

663 F.3d at 116 (quoting *Monell v. Dep't of Social Services of City of New York*, 426 U.S. 658, 694 (1978))).  Absent a predicate constitutional violation, a so-called "*Monell* claim" will not lie against a municipality.  *Id.* (citing cases).

Defendants seek dismissal of the § 1983 claims against the School District and the School Board in the absence of any proof of a constitutional tort caused by a municipal policy described with factual specificity.  Defendants' Memorandum at 3-4.  In opposing dismissal, Plaintiff argues the Complaint adequately alleges that J.P. was subjected to unlawful searches and seizures, unlawfully detained, interrogated, suspended and bullied, such that the due process claim should not be dismissed. Plaintiff's Response at 10-11.  In further support of dismiss, Defendants assert Plaintiff has not pointed to any policy on which Plaintiff relies in opposing dismissal. Defendants' Reply at 4-6.

To establish a Fourteenth Amendment due process claim based on an official policy or custom. Plaintiff must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Toracco v. Port Authority*, 615 F.3d 129, 140 (2d Cir. 2010).  Although Plaintiff "need not identify an express rule or regulation," *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004), Plaintiff must show "that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law. . . ."  *Id.* (internal quotation marks and citation omitted).  Further, bare allegations of the existence of a custom or policy, accompanied by conclusory allegations linking the asserted constitutional injuries to such policy are insufficient to state a *Monell* claim. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 124 (2d Cir. 1991) (reaffirming "that

an allegation of municipal policy or custom would be insufficient if wholly conclusory"). "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Id.* at 123 (citing cases). "The inference that a policy existed may, however, be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, or evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights." *Id.* (finding amended complaint summarizing reports related to transit authority police arrest practices, indicating inadequate training and supervision, sufficiently alleged municipal policy or custom to state *Monell* claim). Nevertheless, the bar on a motion to dismiss is low, and a "complaint arguable satisfies the requirement that it allege . . . the existence of an official policy or custom by alleging that the [municipal defendant] repeatedly condoned and even rewarded [ ] conduct that had been adjudicated to be in violation of civil rights." *Batista v. Rodriguez*, 702 F.2d 397 (2d Cir. 1983) ("the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ramification of unconstitutional conduct within the meaning of *Monell*.").

Here, the Complaint contains only the bare allegations of a municipal policy or custom that are too vague to support a *Monell* claim. For example, the Complaint merely asserts the School Board was "negligent in failing to properly supervise the Plaintiff's decedent and such negligence caused the aforesaid injuries and resulting

death," Complaint ¶ 33, the School Board should have known School District employees or administrators were violating New York Education Law, *id.* ¶ 35, and the School Board acted "through official policies, practices, or customs" under color of New York law when it "denied and deprived J.P. of the rights and privileges protected by federal law and the US. Constitution to J.P.'s injury, detriment, and death," *id.* ¶ 63. Similarly broad and conclusory assertions have been held insufficient to state a *Monell* claim. *See*, *e.g.*, *Gonzalez v. Coburn*, 2017 WL 6512859, at * 4 (W.D.N.Y. Dec. 20, 2017) (citing cases and holding inmate plaintiff's allegations that defendants "created and/or enforced policies and procedures" allowing for violations of the plaintiff's constitutional rights in connection with his assignment to a special "contraband watch" were insufficient to state a *Monell* claim where the complaint failed to allege any specific policies or procedures, the role of any defendant in creating such policies, or any indication any defendant was aware such policies were being enforced against the plaintiff).

Alternatively, even if the Complaint sufficiently alleges a municipal policy or custom, the Complaint still fails to state a claim because, as discussed below, a constitutional violation has not been sufficiently alleged. *Spring I*, 138 F.Supp.2d at 291 (citing cases).

### b.    Substantive Due Process

Defendants argue Plaintiff's Fourth Claim does not plead a plausible substantive due process claim in the absence of factual allegations establishing either that Plaintiff was injured by a state-created danger, or that the state had a special relationship with Plaintiff, Defendants were under no duty to protect Plaintiff from harm. Defendants'

Memorandum at 5-9. In opposition, Plaintiff questions Defendants' reliance on case law involving matters of school bullying and harassment which Plaintiff maintains are inapplicable to the matter at hand. Plaintiff's Response at 10. In further support of dismissal, Defendants assert their reliance on the same argument initially set forth in Defendants' Memorandum on this point. Defendants' Reply at 4-5.

The Fourteenth Amendment's Due Process Clause forbids the state from depriving an individual of life, liberty, or property without due process of law, but it cannot be fairly extended to impose an affirmative obligation on the state to ensure such interests are not harmed through other means. *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 195-96 (1989) (the Fourteenth Amendment's Due Process Clause's "purpose was to protect the people from the State, not to ensure that the State protected them from each other."). "Thus, '[a]s a general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.'" *Ying Jing Gan v. City of New York*, 996 F.2d 522, 533 (2d Cir. 1993) (quoting *DeShaney*, 489 U.S. at 197). "Other language in *DeShaney* has been interpreted as recognizing that in exceptional circumstances a governmental entity may have a constitutional obligation to provide such protection, either because of a special relationship with an individual, or because the governmental entity itself has created or increased the danger to the individual.'" *Id.* (quoting *DeShaney*, 498 U.S. at 198, 201). Even if Plaintiff's claim falls within one of these two exceptions, and Defendants' behavior violated some constitutional obligation, Plaintiff must still establish that Defendants' behavior was "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Matican v. City of New*

*York*, 524 F.3d 151, 155 (2d Cir.) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 848 n. 8 (1998)), *cert. denied*, 555 U.S. 1047 (2008).  The court thus examines first, whether Plaintiff's claims fall within either *DeShaney* exception and, second, whether Defendants' behavior can be said to have been so egregious or outrageous as to shock the contemporary conscience.

With regard to the "special relationship" exception which would have imposed on Defendants a duty to protect J.P. from danger, "involuntary custody" is the "linchpin of any special relationship exception." *Matican*, 524 F.3d at 156.  No court within the Second Circuit has ever found the requisite special relationship applicable in the public school context, despite compulsory school attendance.  *P.W. v. Fairport Central School District*, 927 F.Supp.2d 76, 81-82 (W.D.N.Y. 2013) (holding special relationship doctrine does not apply in the context of peer-on-peer bullying in public school (citing cases)).  In particular, despite compulsory attendance, "the parent ultimately determines the type of education his or her child will receive (private, public, home school), and while schools impose certain rules and restrictions on students, they do not limit an individual's freedom to act in the same manner as involuntary confinement by the state in a state prison or mental institution."  *Id.* at 82 (citing cases).  Although the Second Circuit has yet to rule on this issue, *see Spring*, 655 Fed.Appx. at 28 (affirming district court's dismissal of Plaintiff's substantive due process claim because no facts were alleged plausibly implying individual defendants knew of, yet disregarded, an excessive risk of the student's suicide), the special relationship status which the plaintiffs failed to establish in the peer-on-peer bullying cases is sufficiently analogous to the special

relationship Plaintiff seeks to establish in the instant case, such that Defendants'
reliance on peer-on-peer bullying cases is both appropriate and relevant.

Nor has Plaintiff sufficiently alleged facts establishing DeShaney's "state-created
danger" exception.  In particular, the state-created danger exception requires Plaintiff
"show that the State assisted in 'creating or increasing the danger that the victim faced
at the hands of a third party.'"  *Spring I*, 138 F.Supp.2d at 293 (quoting *Campbell v.
Brentwood Union Free School District*, 904 F.Supp.2d 275, 280 (E.D.N.Y. 2012)).
Toward this end, passive conduct is insufficient as "there must be an affirmative act on
the part of a defendant."  *Id.* (citing *Pena v. DePrisco*, 432 F.3d 98, 109-10 (2d Cir.
2005)).  Recognition of the state-created danger exception generally has occurred in the
context of the creation or increasing of an opportunity to harm a victim, rather than in
scenarios involving suicide.  *See*, *e.g.*, *Robischung-Walsh v. Nassau County Policy
Dep't*, 421 Fed.Appx. 38, 40-41 (2d Cir. Apr. 29, 2011) (affirming dismissal for failure to
state a claim Fourteenth Amendment due process claim under state-created danger
theory of liability claim because county police department's failure to train officers on
suicide prevention, suicide risk assessment, or effect of cumulative post-traumatic
stress disorder was not affirmative conduct).  There is at least one case in the Second
Circuit, however, where allegations of a state-created danger resulting in suicide were
found sufficient to state a Fourteenth Amendment due process violation.  Specifically, in
*Conradt v. NBC Universal, Inc.*, 536 F.Supp.2d 380 (S.D.N.Y. 2008), the court held the
plaintiff, the sister of a state prosecutor who committed suicide upon realizing he was
about to be arrested for soliciting sex from a minor, adequately alleged the suicide was
forseeable under the state-created danger doctrine.  *Conradt*, 536 F.Supp.2d at 393-94.

The circumstances of the arrest included that the police acted upon the persuasion of a television broadcaster in obtaining and executing an arrest warrant in an unnecessarily dramatic manner designed to produce footage for a reality television show. *Id.* The court found that under the alleged circumstances, it was plausible that a reasonable jury could find that, as a result of the defendants' affirmative conduct, the deceased's emotional state was so frail as to pose a substantial suicide risk. *Id.* at 394.

In the instant case, the facts alleged in the complaint are insufficient to support the state-created danger theory of liability for a Fourteenth Amendment due process claim. In particular, the Complaint is devoid of any allegations of affirmative conduct attributed to any particular Defendant with the sole exception of Principal Kruszynski such that the Fourteenth Amendment due process claim must be dismissed for lack of personal involvement. Further, the allegations against Principal Kruszynski are too vague and sparse to state a claim for a due process violation based on the state-created danger theory. In particular, the Complaint alleges only that Kruszynski, on May 6, 2016,

> improperly and negligently interrogated J.P. During this meeting [ ] Kruszynski made false statements, harassed, bullied, and intimidated J.P. and secured participation of a police officer with the sole purpose of improperly intimidating and harassing J.P.

Complaint ¶ 31.

Such allegations are simply too thin to attribute any danger of Plaintiff's suicide to Principal Kruszynski as required for *DeShaney*'s state-created danger exception. *Cf.*, *Conradt*, 536 F.Supp.2d at 394 (holding complaint imputed to defendant television broadcaster sufficient actions of collaborating police officer to support due process claim based on state-created danger of suicide).

Even assuming, *arguendo*, that the Complaint contained adequate allegations establishing either the special-relationship exception, or the state-created danger exception, Plaintiff's Fourteenth Amendment substantive due process claim still fails for lack of allegations of extreme and outrageous conduct shocking contemporary conscience. Specifically, "[a] violation of substantive due process rights requires that the official conduct in question be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Spring*, 655 Fed.Appx. at 28 (quoting *Okin v. Village of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009)). In situations where, as here, "time for deliberations is available to the official, we apply a deliberate indifference standard, which requires demonstration of a willful disregard of the obvious risks, serious implications, and likelihood of harm." *Id.* (internal quotation marks omitted). To state a *DeShaney* state-created danger claim, "factual allegations must be more than 'merely consistent with' the defendant's liability and instead make it 'more than a sheer possibility.'" *Id.* (quoting Iqbal, 556 U.S. at 678). Here, the Complaint is devoid of any factual allegations from which it plausibly may be inferred that any individual defendant, including, *inter alia*, Principal Kruszynski, had actual knowledge of, yet disregarded, an obvious or excessive risk to J.P. *Id. Cf.*, *Conradt*, 536 F.Supp.2d at 394 (finding circumstances surrounding arrest of public prosecutor, including attempts to "sensationalize and enhance the entertainment value" of confrontations between law enforcement and individuals about to be arrested for seeking sex with a minor, for purposes of reality television show, the mainstay of which is public humiliation, established defendant's conduct was sufficiently conscience-shocking to support deliberate indifference to the enhanced risk of suicide created by

defendant).  Because the Complaint's allegations fail to meet the deliberate indifference requirement with regard to any Defendant, the substantive due process claim fails on the both the special relationship and state-created danger prongs.

### c.    Procedural Due Process

Defendants note that although not clear from the Complaint, any Fourteenth Amendment procedural due process claim must be dismissed for failure to state a claim because no facts have been alleged allowing the court to determine whether J.P. was deprived of any property or liberty interest or that any process J.P. received was insufficient.  Defendants' Memorandum at 6 n. 1.  In opposing dismissal, Plaintiff argues the Complaint alleges a Fourteenth Amendment procedural due process violation with regard to the search and seizure of J.P. and his cellular telephone despite knowledge of Plaintiff's status as a special education student with an auditory processing disorder. Plaintiff's Response at 9-11 (citing procedural due process cases).  In further support of dismissal, Defendants maintain the Complaint fails to plausibly allege any search or seizure was not justified at its inception or that its scope was unreasonable. Defendants' Reply at 5-6.

As relevant to the instant case, "'[t]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property without due process of law, and 'those who seek to invoke its procedural protection must establish that one of these interests is at stake.'"  *Horton v. Westling*, __ F.3d __; 2018 WL 922190, at * 4 (2d Cir. Feb. 15, 2018) (quoting *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (additional internal quotation marks and citation omitted)).  "'[S]tandard analysis under that provision proceeds in two steps: We first ask whether there exists a

liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient.'" *Id.* (quoting *Victory*, 814 F. 3d at 59). Assuming, *arguendo*, J.P. had a liberty interest in remaining free from interrogation by Principal Kruszynski on May 6, 2016, and had a property interest in his cellular phone which Kruszynski allegedly seized and searched during the interrogation, Complaint ¶ 31,[8] the remaining question is what process was due prior to the seizure and search of J.P. and his cellular phone.

"[I]t is well-established in the context of disciplinary proceedings . . . that post-discipline due process provides sufficient due process to satisfy the requirements of the Fourteenth Amendment." *Horton*, 2018 WL 922190, at * 5. "As such, the availability of an adequate post-deprivation hearing will preclude a procedural due process claim." *Id.* In New York, "an Article 78 proceeding is 'itself a sufficient post-deprivation remedy' precluding a procedural due process claim for review of decisions by school administrators." *Id.* (quoting *S.C. v. Monroe Woodbury Central School District*, 2012 WL 2940020, at * 10 (S.D.N.Y. July 18, 2012), and citing *DeFabio v. E. Hampton Union Free School District*, 658 F.Supp.2d 461, 491 (E.D.N.Y. 2009), *aff'd*, 623 F.3d 71 (2d Cir. 2010); and *Bogle-Assegai v. Bloomfield Board of Education*, 467 F.Supp.2d 236, 243 (D.Conn. 2006), *aff'd*, 312 Fed.Appx. 435 (2d Cir. 2009)). Significantly, an Article 78 proceeding has been held sufficient to review both a school official's justification for searching a student on school premises, as well as any resulting discipline. *See*, *e.g.*, *JF v. Carmel Central School District*, 168 F.Supp.3d 609, 620 (S.D.N.Y. 2016) (holding plaintiffs could have and should have availed themselves of Article 78 hearing process

---

[8] The Complaint does not specify any liberty or property interest of which J.P. allegedly was deprived without procedural due process.

prior to commencing procedural due process claim and failure to do so was fatal to such claim).  Accordingly, Plaintiff's procedural due process claim should be dismissed for failure to state a claim.

### d.  Equal Protection

The Complaint's Fourth Claim for Relief also alleges Defendants subjected J.P. to disparate treatment in violation of the Fourteenth Amendment's Equal Protection Clause.  Complaint ¶ 60.  Defendants argue in support of dismissal Plaintiff has failed to allege Defendants purposefully discriminated against J.P. on the basis of a protected characteristic, and that insofar as Plaintiff alleges "J.P. was discriminated against on the basis of disability and treated disparately in comparison to students outside the class of persons suffering from disabilities," with such disparate treatment attributed to J.P.'s disabilities, Plaintiff has failed to plead any facts linking Defendants' alleged unlawful conduct with Plaintiff's disabilities.  Defendants' Memorandum at 9-13 (quoting and citing Complaint ¶¶ 73-74).  In opposition, Plaintiff does not address this argument.

The Fourteenth Amendment's Equal Protection Clause makes it unlawful to "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "To maintain an equal protection claim, a Plaintiff must 'show adverse treatment of individuals compared with other similarly situated individuals and that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  *Spring I*, 138 F.Supp.3d at 294 (quoting *Miner v. Clinton County*, 541 F.3d 464, 474 (2d Cir. 2008), *cert. denied*, 556 U.S. 1128 (2009)).  "It must

also be shown that the alleged disparity in treatment cannot survive the appropriate level of scrutiny." *Id.* (citing cases).

Here, the only characteristic on which the equal protection claim is based is J.P.'s learning disabilities. Disability, however, "is not a suspect classification under the Equal Protection Clause.'" *Chick v. County of Suffolk*, 546 Fed.Appx. 58, 60 (2d Cir. 2013) (citing *Suffolk Parents of Handicapped Adults v. Wingate*, 101 F.3d 818, 824 n. 4 (2d Cir. 1996), *cert. denied*, 520 U.S. 1239 (1997)). Even if a learning disability constituted a suspect classification, the claim must still be dismissed. In particular, because a disparate treatment claim requires showing that the person "was treated differently than others similarly situated as a result of intentional or purposeful discrimination," *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005), yet the Complaint is devoid of any allegations of disparate treatment between J.P. and similarly situated students, and the absence of such allegations renders it impossible to plausibly infer that J.P. was subjected to select treatment based on his disability, let alone that such treatment was irrational. *Id.* (requiring disparate treatment to fail "the appropriate level of scrutiny" applicable to the equal protection claim). Accordingly, no equal protection claim can lie insofar as it is based on Plaintiff's learning disability.

Nor, as Defendants argue, Defendants' Memorandum at 12-13, does Plaintiff state a "class of one" claim. Specifically, a class of one theory of equal protection "presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review . . . ." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 605 (2008). This is because the Equal Protection Clause's purpose "'is to secure every person within the State's jurisdiction

against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923)). "[S]ucessful equal protection claims brought by a 'class of one'" must allege the injured party has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Telian v. Town of Delhi*, 709 Fed.Appx. 79, 81 (2d Cir. Jan. 16, 2018) (quoting *Olech*, 528 U.S. at 564). "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). In the instant case, Plaintiff has neither identified any similarly situated student, let alone any student allegedly subjected to different treatment than Plaintiff for a similar school offense.[9] As such, the Complaint also fails to state a Fourteenth Amendment equal protection claim based on a class of one.

Defendants' Motion should be GRANTED as to the Fourth Claim.

### 5.    ADA and Rehabilitation Act

Plaintiff asserts claims for relief under the ADA, Complaint ¶¶ 76-81 (Seventh Claim) ("ADA Claim"), and the Rehabilitation Act, *id.* ¶¶ 82-87 (Eighth Claim) ("Rehabilitation Act Claim"). Defendants seek dismissal of both the ADA and Rehabilitation Act Claims because Plaintiff has not plausibly alleged J.P. suffered bullying, harassment, or discrimination as a result of his alleged bullying, but has merely alleged in conclusory fashion that J.P. was discriminated against based on his disability.

---

[9] As stated, Facts, *supra*, at 4, the Complaint utterly fails to describe the incident for which Plaintiff allegedly was disciplined.

Defendants' Memorandum at 13-17.  In opposition, Plaintiff maintains the elements for claims under both the ADA and Rehabilitation Act have been adequately pleaded, but Defendants are attempting to subject such claims to a heightened pleading standard which Plaintiff asserts is "fundamentally unfair" as a reason for Defendants to seek dismissal of these claims for lack of detailed allegations given that Defendants are in "exclusive possession" of J.P.'s school discipline records and the surviving witnesses to the events leading to J.P.'s suicide.  Plaintiff's Response at 12-13.  In further support of dismissal, Defendants reiterate that the Complaint's allegations under the ADA and Rehabilitation Act are too conclusory to avoid dismissal for failure to state a claim. Defendants' Reply at 6.

Claims under Title II of the ADA and Section 504 of the Rehabilitation Act (together, "the Acts") are subject to identical analysis.  *Henrietta D. v. Bloomberg*, 331 F.3d 262, 272 (2d Cir. 2003).  To state a claim under either of the Acts, it must be alleged the plaintiff (1) is a qualified individual with a disability; (2) the defendants are subject to the relevant Act; and (3) the plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of the plaintiff's disabilities.  *Tylicki v. St. Onge*, 297 Fed.Appx.65, 66-67 (2d Cir. Oct. 28, 2008) (citing *Powell v. National Board of Medical Examiners*, 364 F.3d 79, 85 (2d Cir. 2004)).  In the instant case, Defendants do not deny that Plaintiff has adequately alleged J.P. was a qualified individual as defined under the Acts, or that Defendants are subject to the Acts, but do dispute that the Complaint alleges Defendants discriminated against Plaintiff because of Plaintiff's

31

disabilities, asserting the Complaint merely alleges such discrimination in a conclusory

fashion.  *See* Defendants' Memorandum at 14.

A plain reading of the ADA and Rehabilitation Act claims establishes they are

merely formulaic recitations of the elements of a disability-based discrimination claim

which are insufficient to state a claim under either of these two Acts.  To illustrate the

paucity of these allegations, the relevant paragraphs of the Complaint are set out in full.

Specifically, it is alleged in the Complaint's Facts that

> While attending the Lancaster Central Middle School, J.P. was subjected to
> continuing, recurring and unremedied harassment by school employees, and/or
> administrators, including Defendant Peter F. Kruszynski *because of J.P.'s
> disabilities*.

Complaint ¶ 29 (italics added).

The Complaint's ADA claim provides

> Defendant Lancaster Central School District violated Title II of the ADA in that
> J.P. was subjected to discrimination based on his disabilities while enrolled and
> attending school at said School District and/or suffered from policies, practices,
> and/or procedures which had discriminatory effect.
>
> *Inter alia*, Defendants caused and failed to take action to protect J.P. from
> bullying, harassment and discrimination because of his disabilities as well as
> themselves engaging in discrimination because of his disabilities.  Defendants
> also retaliated against J.P. for opposing said bullying, harassment and
> discrimination.  Such conduct ultimately resulted in the suicide of J.P.

Complaint ¶¶ 79-80.

The Complaint's claim under the Rehabilitation Act similarly alleges

> Defendant Lancaster Central School District violated the Rehabilitation Act in that
> J.P. was subjected to discrimination based on his disabilities while enrolled and
> attending school at said School District.
>
> *Inter alia*, Defendants failed to take action to protect J.P. from bullying,
> harassment and discrimination because of his disabilities as well as themselves
> engaging in discrimination because of his disabilities.  Defendants retaliated

against J.P. for opposing bullying, harassment and discrimination.  Defendants also retaliated against Denise Piechowicz for advocating for her disabled son.

Complaint ¶¶ 85-86.

Similarly sparse allegations have been held insufficient to plausibly state discrimination claims under the ADA or the Rehabilitation Act.  *See, e.g.*, *Vogt v. Rochester City School District*, 2013 WL 6181882, at * 2 (W.D.N.Y. Nov. 25, 2013) (dismissing as implausible plaintiff's conclusory assertion his employment was terminated "on the basis of his disability" without alleging any facts in support).  In contrast, what would otherwise be considered as conclusory assertions of discriminatory animus have been found to state a claim where the complaint also contains factual allegations supporting the alleged discriminatory animus.  For example, in *Phelan v. Thomas*, 439 Fed.Appx. 48 (2d Cir. Sept. 28, 2011), a *pro se* inmate plaintiff with attention deficit disorder and traumatic brain injury alleged discrimination under the ADA based on a denial of access to public services at the prison.  The lower court concluded the allegations of discrimination "because of his disability" were insufficient to state a plausible discrimination claim under the ADA.  *Id.* at 50.  In reversing, the Second Circuit found plaintiff's allegations that he was "flatly denied" treatment by prison psychologist, another doctor told the plaintiff to "get out, we don't treat retards," and corrections officers' refusal of plaintiff's request to file a grievance were accompanied by statements, "Oh, you're that fucking retard that wants treatment.  We don't allow fucking inmates to file grievances," and "they don't allow retards to file grievances," provided sufficient plausibility to link the alleged discriminatory treatment to the plaintiff's disabilities.  *Id.* at 50-51.  Significantly, the instant Complaint is devoid of any factual allegation plausibly permitting an inference of discriminatory animus on the part of any

Defendant so as to "nudge [the] claims across the line from conceivable to plausible. . .

." *Twombly*, 550 U.S. at 570.  Accordingly, the ADA and Rehabilitation Act claims

should be dismissed for failure to state a claim.

Insofar as the Complaint attempts to assert Defendants retaliated against J.P.

and Plaintiff for complaining about and opposing bullying, harassment, and

discrimination in violation of the ADA and the Rehabilitation Act, Complaint ¶¶ 80, 86,

the elements of a retaliation claim under both Acts include, (1) that plaintiff was

engaged in protected activity; (2) the asserted retaliator was aware of the protected

activity; (3) an adverse action was taken against the plaintiff; and (4) there exists a

causal connection between the protected activity and the adverse action.  *Weixel v.*

*Board of Education of the City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (citing

cases).  Here, not only is the Complaint bereft of any factual allegations as to the

protected activity in which Plaintiff and J.P. assertedly engaged, the Complaint also fails

to allege the adverse actions to which Plaintiff and J.P. supposedly were subjected, let

alone any allegations connecting the unspecified adverse actions to the unidentified

protected activity.  Accordingly, any retaliation claim Plaintiff seeks to assert under

either the ADA or the Rehabilitation Act should be dismissed for failure to state a claim.

Defendants' Motion should be GRANTED as to the Seventh and Eighth Claims.

### 6.    New York Claims

Plaintiff alleges claims under New York law, including New York Est. Powers and

Trusts Law § 5-4.1 claim for wrongful death (First Claim), common law claims for

negligence (Second Claim), gross negligence (Third Claim), and negligent or intentional

infliction of emotional distress (Ninth Claim), New York Constitutional claims for

violations of due process (Fifth Claim), and equal protection (Sixth Claim), and New York Civil Rights Law § 79-n (Tenth Claim).

Preliminarily, Defendants maintain that the state claims brought on Plaintiff's own behalf are at least partially barred insofar as they are subject to New York's notice of claim requirements under the 90-day statute of limitations under New York General Municipal Law ("N.Y. Gen. Mun. Law") § 50-e ("§ 50-e"), and the one year and ninety day statute of limitations for commencing an action under N.Y. Gen. Mun. Law § 50-i ("§ 50-i"), Defendants' Memorandum at 18, and that the state claims should be dismissed as to all individual Defendants who were not named in the Notice of Claim served August 2, 2016, on the Town of Lancaster and Defendant School District.  *Id.*  In opposition, Plaintiff maintains that the only claim brought on Plaintiff's own behalf is the wrongful death claim, which accrued with J.P.'s death on May 6, 2016, such that the notice of claim, served on August 2, 2016, was within the 90-days permitted under § 50-e, and the filing of this action in state court on August 4, 2017, was within the one year and ninety days permitted under § 50-i., Plaintiff's Response at 13, and individual defendants are not required to be named in a Notice of Claim.  *Id.*   Defendants assert no further argument regarding any bar under either § 50-e or § 50-i.

The filing of a notice of claim is a condition precedent to the commencement of an action against a municipality.  N.Y. Gen. Mun. Law § 50-e[1](a).  Service of the notice of claim is to be made within 90 days of the claim's accrual.  *Id.*  Further, such claims are subject to a one-year and ninety-days statute of limitations.  N.Y. Gen. Mun. Law § 50-i[1].  In the instant case, because the state claims are predicated on J.P.'s death by suicide on May 6, 2016, they are in compliance with the service of the Notice

of Claim on August 2, 2016, and are not time-barred given the action was commenced

in state court on August 4, 2017.  Moreover, as Plaintiff asserts, Plaintiff's Response at

13, the individual defendants to an action need not be named in a Notice of Claim.

*Goodwin v. Pretorius*, 962 N.Y.S.2d 539, 541 (4th Dep't 2013) (holding § 50-e requires

neither that notice of claim name or be served on municipal employees (citing N.Y. Gen.

Mun. Law § 50-e)).  Accordingly, that the Notice of Claim neither names nor was served

on the individual Defendants does not support dismissal of any claims against such

Defendants.

  With the dismissal of all federal claims, whether to exercise supplemental

jurisdiction pursuant to 28 U.S.C. § 1367(c), over the remaining state claims is a matter

within the court's discretion.  *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 204-05 (2d

Cir. 2003) (reviewing for abuse of discretion federal district court's decision to decline

exercising supplemental jurisdiction over state law claims after all federal law claims

have been eliminated prior to trial).  In discerning whether to exercise supplemental

jurisdiction after dismissal of all federal claims, courts must balance judicial economy,

convenience, fairness, and comity.  *Id.* (citing *Carnegie-Mellon University v. Cohill*, 484

U.S. 343, 349-50 (1988).  Significantly, "where the federal claims had been dismissed at

a relatively early stage and the remaining claims involved issues of state law that were

unsettled, [the Second Circuit has] concluded that the exercise of supplemental or

pendent jurisdiction was an abuse of discretion."  *Id.* at 306 (citing cases).  In the instant

case, the court should refrain from exercising supplemental jurisdiction over the state

claims because all federal claims have been dismissed, the Tenth Claim asserting a

violation of New York Civil Rights Law § 79-n presents a novel question of law not yet

considered by New York courts, *see* Discussion, *infra*, at 39-41, and the case remains at an early stage of the proceedings being before the court on a motion to dismiss.

Alternatively, the court considers whether any of the claims under New York law are sufficiently alleged to avoid dismissal under Rule 12(b)(6).

### a.    State Constitution

The Fifth and Sixth Claims for Relief assert violations of New York Constitution Article I, § 6 (due process) (Fifth Claim), and Article I § 11 (equal protection) (Sixth Claim).  Defendants argue in support of dismissal that such claims should be dismissed for the same reasons the analogous § 1983 claims for violations of federal due process and equal protection claims should be dismissed.  Defendants' Memorandum at 18-19. Alternatively, Defendants maintain the New York Constitution claims should be dismissed as redundant of the § 1983 claims.  *Id.* at 19.  In opposition, Plaintiff argues due process claims under the New York Constitution are more broad than under the United States Constitution, Plaintiff's Response at 12, and that unlike the federal constitutional claims, which are based on § 1983 and, thus, statutory, claims under the New York Constitution are more analogous to actions pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), such that § 1983 case law is inapplicable.  *Id*.  In further support of dismissal, Defendants reference Plaintiff's failure either to offer any case law in support of her argument or to otherwise oppose Defendants' argument that the New York constitutional claims are redundant of the § 1983 claims.  Defendants' Reply at 7.  As discussed, Discussion, *supra*, at 20-28, both Plaintiff's federal substantive and procedural due process claims are deficient.

With regard to Plaintiff's Fifth Claim asserting a violation of the guarantee of due process under New York Constitution Art. I, § 6, in the absence of any argument from Plaintiff asserting entitlement to greater due process protection under the New York Constitution, the court should not reach the issue. *See Oneida Indian Nation of New York v. Madison County*, 665 F.3d 408, 427 n. 13 (2d Cir. 2011) (recognizing "New York courts have interpreted the due-process guarantees of the New York Constitution and the United States Constitution to be coextensive – or assumed they are," but refraining from deciding whether New York Constitution Art. I, § 6 provides any greater due process relief than is available under the Fourteenth Amendment to the federal Constitution in the absence of some assertion by the plaintiff that it was entitled to greater due process protection under state constitutional law than under federal constitutional law).

As for the Sixth Claim asserting a violation of equal protection under New York Constitution Art. I, § 11, it is settled that "the Equal Protection Clauses of the U.S. Constitution and the New York Constitution are co-extensive . . . ." *Selevan v. New York Thruway Authority*, 584 F.3d 82, 88 (2d Cir. 2009) (citing *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 52 n. 3 (2d Cir. 2007) ("Because the Equal Protection Clauses of the federal and New York Constitutions are coextensive, our analysis responds to [plaintiff's] claims under each of these provisions.")). Here, Plaintiff's federal equal protection claim fails. *See* Discussion at 28-30. Accordingly, the Sixth Claim fails to state a claim under the New York Constitution's Equal Protection Clause, Article I § 11 and should be dismissed.

Moreover, the New York Court of Appeals considers a state constitutional violation claim as neither necessary nor appropriate where remedies are available under § 1983.  *See Biswas v. City of New York*, 973 F.Supp.2d 504, 522 (S.D.N.Y. 2013) ("Although the New York Court of Appeals has recognized a cause of action for damages based on official conduct violating the State's Constitution, the same court has made clear that such a cause of action is a 'narrow remedy' available only when 'necessary to effectuate the purposed of the State constitutional protections [that the] plaintiff invokes' or 'appropriate to ensure full realization of [the plaintiff's] rights.'" (quoting *Brown v. State of New York*, 674 N.E.2d 1129, 1140-41 (N.Y. 1996), and *Martinez v. City of Schenectady*, 761 N.E.2d 560, 563 (N.Y. 2001)), *appeal dismissed*, 576 Fed.Appx. 58 (2d Cir. 2014).

Accordingly, Defendants Motion should be GRANTED as to Plaintiff's Fifth and Sixth Claims.

### b.    New York Civil Rights Law

The Tenth Claim seeks relief under New York Civil Rights Law § 79-n ("§ 79-n"), which provides for a civil remedy for bias-related violence or intimidation.  Defendants argue the Tenth Claim fails to state a claim under § 79-n because Plaintiff has only alleged in a conclusory fashion that J.P. was the victim of a hate crime, but has not alleged Defendants perpetrated any acts of bias-related violence or intimidation against J.P.  Defendants' Memorandum at 19-20.  In opposition, Plaintiff argues that the remedial nature of § 79-n requires broad construction, rather than the limiting construction urged by Defendants.  Plaintiff's Response at 14-15.  In further support of dismissal, Defendants reiterate that in the absence of any factual allegations linking

J.P.'s alleged disability with any alleged treatment, the § 79-n claim is too conclusory

and "patently insufficient."  Defendants' Reply at 7.

The crux of Plaintiffs' Tenth Claim is that

> All Defendants, through acts of omission or commission, intentionally selected J.P. for harm, and caused J.P. injury and harm as set forth in the proceeding [*sic*] paragraphs in whole or in substantial part because of a belief or perception regarding J.'s [*sic*] disability.

> The acts and/or omissions of the Defendants constituted a hate crime.

Complaint ¶¶ 94-95.

As relevant, § 79-n provides that

> Any person who intentionally selects a person . . . for harm . . . or causes physical injury or death to another in whole or in substantial part because of a belief or perception regarding the . . . disability . . . of a person, regardless of whether the belief or perception is correct, shall be liable, in a civil action . . . for injunctive relief, damages, or any other appropriate relief in law or equity. . . .

N.Y. Civil Rights Law § 79-n[2] (McKinney's 2010).

This court has recognized that § 79-n "is a relatively new law" which New York

courts have not had much opportunity to consider such that "there is little guidance" as

to its applicability.  *Spring v. Allegany-Limestone Central School District*, 2017 WL

6512858, at * 8 (W.D.N.Y. Dec. 20, 2017) ("*Spring II*") (quoting *Spring I*, 138 F.Supp. 3d

at 300).  The courts that have considered § 79-n have not done so in the context of

school bullying or harassment as is alleged in the instant case.  *Id.* (citing *Karam v. City*

*of Rensselaer, New York*, 2016 WL 51252, at * 18 (N.D.N.Y. Jan. 4, 2014)).  Absent

interpretation of a statute from other courts, the statute's legislative history guides the

construction of its applicability to discrimination actions.  *See Auburn Housing Authority*

*v. Martinez*, 277 F.3d 138, 143-44 (2d Cir. 2002) (observing courts may look to legislative history to interpret a statute's ambiguous text).

"The legislative history of § 79-n states that 'this new remedy applies only to 'bias-related violence or intimidation' and it is not 'available where existing discrimination laws already provide protection, such as in employment or public housing decisions.'" *Spring II*, 2017 WL 6512858, at * 8 (quoting *Governor's Approval Memorandum*, No. 7, ch 227, filed with Assembly Bill Number 529[10]).  Because the ADA and Rehab Act already provide protection against disability-based discrimination, relief under § 79-n is not available.  *Id.*  Nor does the Complaint contain any factual allegations that J.P. was subjected to any violence or intimidation based on his disability, and Plaintiff cites to no contrary authority.

Defendants' Motion should be GRANTED as to the Tenth Claim seeking relief under § 79-n for failure to state a claim.

### c.    Common Law Claims

The First, Second, and Third Claims assert, respectively, wrongful death,[11] negligence, and gross negligence under New York common law.  Defendants argue in

---

[10] A copy of this document is filed as Dkt. 4-6.

[11] In the Complaint's Preliminary Statement, Plaintiff references N.Y. Est. Powers & Trusts Law § 5-4.1 ("§ 5-4.1") as the statutory source for the wrongful death claim, Complaint ¶ 1, but does not again reference § 5-4.1 in the First Claim, Complaint ¶¶ 37-40.  Nor is there any reference to § 5-4.1 in any of the legal memoranda submitted by Defendants in supporting dismissal, or by Plaintiff in opposing dismissal. Although a wrongful death is statutory under N.Y. Est., Powers & Trusts Law § 5-4.1, *Hernandez v. New York City Health and Hospitals Corp.*, 585 N.E.2d 822, 825 (N.Y. 1991) ("The wrongful death cause of action in New York is exclusively statutory . . . .  We have no common-law cause of action for wrongful death." (citing cases)), a plausible wrongful death claim requires a plausible negligence claim.  *See Melvin v. County of Westchester*, 2016 WL 1254394, at * 22 (S.D.N.Y. Mar. 29, 2016) (citing *McCluskey v. United States*, 583 F.Supp. 740, 749 (S.D.N.Y. 1984) (elements of wrongful death claim include death of a human being, negligence of defendant causing the death, survival of decedent's distributees, and appointment of decedent's personal representative (citing *Chong v. New York City Transit Authority*, 441 N.Y.S.2d 24, 25-26 (2d Dep't 1981)))).  Accordingly, Plaintiff's wrongful death claim is addressed with the common law negligence and gross negligence claims.

support of dismissal that the Complaint (1) is devoid of any allegations that Defendants had any prior notice of any discrimination, harassment, or bullying that would lead to J.P.'s suicide, or that Defendants failed to take any available action to prevent J.P.'s suicide such that the failure to act was a contributing factor to J.P.'s death, Defendants' Memorandum at 21; (2) fails to plausibly allege Defendants owed any relevant duty to protect J.P. when off school premises and outside school custody, *id.* at 21-22; and (3) fails to assert any factual allegations plausibly suggesting any behavior by Defendants giving rise to liability for negligence or gross negligence. *Id.* at 22-23. Defendants further maintain that insofar as Plaintiff seeks to recover damages on her own behalf for negligence, no such cause of action is recognized. *Id.* at 23. In opposition, Plaintiff asserts the Complaint's allegations that J.P. committed suicide on the same day as Defendants' alleged tortious conduct sufficiently pleads the requisite foreseeability and proximate cause to support the wrongful death, negligence, and gross negligence claims, and disputes that there is any legal significance to the fact the suicide occurred off school premises. Plaintiff's Response at 15-17. In further support of dismissal, Defendants argue Plaintiff has failed to point to any facts regarding proximate cause or foreseeability as required to establish the requisite duty for these claims. Defendants' Reply at 7-8.

"Precedent of long standing establishes that public policy permits negligent tort-feasors to be held liable for the suicide of persons who, as a result of their negligence, suffer mental disturbance destroying the will to survive." *Fuller v. Preis*, 322 N.E.2d 263, 265 (N.Y. 1974) (citing cases). Insofar as the Second Claim is for negligence, the elements of a cause of action for negligence under New York common law include a

duty owed by the defendant, a breach of that duty, and a showing that the breach was a proximate cause of the plaintiff's injury. *Pasternack v. Laboratory Corporation of America Holdings*, 59 N.E.3d 485, 490 (2016) (citng cases). "In the absence of a duty, as a matter of law, there can be no liability." *Id.* "The definition and scope of an alleged tortfeasor's duty owed to a plaintiff is a question of law." *Id.*

"A school district is not an insurer of the safety of its students, and the duty owed to its students is co-extensive with the school's physical custody and control over them." *Diaz v. Brentwood Union Free School Dist.*, 36 N.Y.S.3d 161, 162-63 (2d Dep't 2016) (internal quotation marks and citations omitted). "A school's custodial duty ceases once the student has passed out of its orbit of authority and the parent is perfectly free to reassume control over the child's protection." *Id.* "Thus, a school generally cannot be held liable for injuries that occur off school property and beyond the orbit of its authority." *Id.* In contrast, to impose liability on the school, there must be specific knowledge of the particular danger or the school must release the student without further supervision "into a foreseeably hazardous setting it had a hand in creating." *Ernest v. Red Creek Cent. School Dist.*, 717 N.E.2d 690, 693 (N.Y. 1999) (school district's duty of care toward student generally ends when it relinquishes custody of student, but duty continues when student is released into potentially hazardous situation, particularly when the hazard is partly of the school district's own making and thus foreseeable). In the instant case, the Complaint is devoid of any factual allegations plausibly suggesting J.P. was released from school into a foreseeably dangerous situation which Defendants has a hand in creating such that the requisite duty is not alleged. Accordingly, the Complaint fails to state a claim for negligence. *Pasternack*,

59 N.E.3d at 490.  Nor does the Complaint state a claim for negligent hiring, training,

retention, or supervision in the absence of some factual allegations that any Defendant

knew or should have known of any propensity of J.P. to take his own life.  *See Coffey v.*

*City of New York*, 853 N.Y.S.2d 551, 552-53 (1st Dep't 2008) (negligent hiring and

retention); *Naegele v. Archdiocese of New York*, 833 N.Y.S.2d 79, 80 (1st Dep't)

(negligent supervision), *lv. denied*, 872 N.E.2d 876 (N.Y. 2007).

With regard to the Third Claim asserting gross negligence, a claim for gross

negligence under New York law has four elements including (1) the existence of a duty,

(2) breach of the duty, (3) injury proximately caused by the breach, and (4) conduct by

the defendant "that evinces a reckless disregard for the rights or others or 'smacks' of

intentional wrongdoing."  *American Telephone & Telegraph Co. v. City of New York*, 83

F.3d 549, 555 (2d Cir. 1996) (internal quotation omitted).  Here, the same failure to

allege facts plausibly suggesting any duty was owed to J.P. after J.P. left school on May

6, 2016, Discussion, *supra*, at 43, also dooms the gross negligence claim.

As for the wrongful death claim, "there is no question that 'negligent tort-feasors

may be liable for the wrongful death, by suicide, of a person injured by their

negligence.'"  *Case v. Anderson*, 2017 WL 3701863, at * 20 (S.D.N.Y. Aug. 25, 2017)

(quoting *Fuller*, 322 N.E.2d at 265).  Although a claim for wrongful death is statutory,

*Hernandez*, 585 N.E.2d at 825, because a plausible wrongful death claim requires a

plausible negligence claim, *Melvin*, 2016 WL 1254394, at * 22, and because the instant

Complaint fails to state a plausible negligence claim, Discussion, *supra*, at 43-44, it also

fails to state a plausible wrongful death claim, requiring the dismissal of such claim

under Rule 12(b)(6).

Defendants' Motion should be GRANTED as to the First, Second, and Third
Claims alleging wrongful death, negligence, and gross negligence.

### d.    Infliction of Emotional Distress

The Ninth Claim asserts "intentional and/or reckless and/or negligent infliction of
severe emotional distress" against Defendant Kruszynski.  In support of dismissal,
Defendants argue public policy bars claims for intentional infliction of emotional distress
as against governmental entities and employees, and no "extreme and outrageous"
conduct as required to support an intentional infliction of emotional distress claim or a
negligent infliction of emotional distress claim has been alleged.  Defendants'
Memorandum at 23-24.  In opposition, Plaintiff argues Kruszynski's alleged conduct of
illegally searching and detaining J.P., whom Kruszynski knew had a central auditory
processing disorder, and summoning the involvement of a police officer solely to
intimidate and harass J.P., constitutes sufficiently extreme and outrageous conduct to
support claims for negligent and intentional infliction of emotional distress.  Plaintiff's
Response at 17-18.  In further support of dismissal, Defendants assert that the failure to
allege any duty on the part of Kruszynski is fatal to the negligent infliction of emotional
distress claim, Plaintiff has not addressed the public policy bar to intentional infliction of
emotional distress claims against governmental entities and their employees, and the
facts on which Plaintiff relies for the proposition that Kruszynski's conduct was extreme
and outrageous in light of Plaintiff's central auditory processing disorder are not alleged
in the Complaint.[12]  Defendants' Reply at 8 & n. 5.

---

[12] Because Plaintiff does not dispute Defendants argument that no cause of action for reckless infliction of
emotional distress has been recognized, Defendants' Memorandum at 23 n. 1, the issue is not further
addressed.

In New York, "[a] plaintiff may recover for the negligent infliction of emotional distress when a defendant owes a direct duty to the plaintiff . . . and a breach of that duty results in emotional injury." *Ivery v. Baldauf*, __ F.Supp.3d __; 2018 WL 879905, at * 9 (W.D.N.Y. Feb. 14, 2018) (quotation marks and citations omitted). "Under New York law, intentional infliction of emotional distress requires a showing of: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.'" *Warr v. Liberatore*, 270 F.Supp.3d 637, 654 (W.D.N.Y. 2017) (quoting *Howell v. N.Y. Post Co., Inc.*, 612 N.E.2d 699, 702 (N.Y. 1993)). Both torts of negligent infliction of emotional distress and intentional infliction of emotional distress require a showing "'that the defendant's conduct is so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Ivery*, 2018 WL 879905, at * 9 (quoting *Berrios v. Our Lady of Mercy Medical Center*, 799 N.Y.S.2d 452, 454 (1st Dep't 2005)). New York's standard for extreme and outrageous conduct is "rigorous, and difficult to satisfy." *Tebbenhoff v. Electronic Data Systems Corp.*, 244 Fed.Appx. 382, 384 (2d Cir. 2007) (citing *Conboy v. AT&T Universal Card Service Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Howell*, 612 N.E.2d at 702)). In the instant case, both the negligent and intentional infliction of emotional distress claims should be dismissed for failing to state claims for which relief may be granted before reaching whether the Complaint alleges conduct sufficiently extreme and outrageous to satisfy the rigorous and difficult standard.

In particular, because negligent infliction of emotional distress requires a breach of a duty, *Ivery*, 2018 WL 879905, at * 9, as discussed in connection with the negligence, gross negligence, and wrongful death claims, the Complaint is devoid of any allegations that any Defendant, including Kruszynski, the only Defendant against whom the infliction of emotional distress claims are asserted, engaged in any behavior that created a situation foreseeably dangerous to J.P. after J.P. left the school premises.  Discussion, *supra*, at 43-44.  In the absence of any such duty, the negligent infliction of emotional distress claim fails.

With regard to the intentional infliction of emotional distress claim, courts in New York have repeatedly held that "public policy bars claims sounding in intentional infliction of emotional distress against a government entity."  *Rivera v. City of New York*, 392 F.Supp.2d 644, 657 (S.D.N.Y. 2005) (quoting *Lauer v. City of New York*, 659 N.Y.S.2d 57, 58 (2nd Dep't 1997)).  *See Wyllie v. District Attorney of County of Kings*, 770 N.Y.S.2d 110, 115 (2nd Dep't 2003) (dismissing as barred by public policy intentional infliction of emotional distress claims asserted against city and district attorneys); *LaBelle v. St. Lawrence County*, 445 N.Y.S.2d 275, 278 (3rd Dep't 1981) (dismissing as barred by public policy intentional infliction of emotional distress claims asserted against police and social worker who participated in removing unattended children from their home and placing them in foster home overnight until their parents returned the next day).  Plaintiff has not argued in opposition to this proposition. Accordingly, the intentional infliction of emotional distress claim must be dismissed as against Defendant Kruszynski in his official capacity as Principal.

Consideration, in the alternative, of whether the Complaint adequately alleges conduct sufficiently extreme or outrageous to support either a negligent or intentional infliction of emotional distress claim also fails.  In particular, the bald and conclusory allegations, including, most relevantly, that when interrogating J.P. on May 6, 2016, "Defendant Peter F. Kruszynski made false statements, harassed, bullied, and intimidated J.P. and secured participation of a police officer with the sole purpose of improperly intimidating and harassing J.P.," Complaint ¶ 31, and that Kruszynski's actions caused J.P. "severe emotional distress, which caused him injury and caused his death," *id.* ¶ 91, are simply too bare and conclusory to meet the "rigorous and difficult standard."  *Howell*, 612 N.E.2d at 702 ("Indeed, of the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous.").  Nor is there any indication in the Complaint that J.P. told Plaintiff about any false, harassing, bullying or intimidating statements made by Kruszynski.

Defendants' Motion should be GRANTED as to the Ninth Claim alleging both negligent and intentional infliction of emotional distress.

## B.    Damages

Defendants argue some of Plaintiff's damages requests must be dismissed, including the claims for deprivation of companionship, loss of consortium, injunctive relief, and punitive damages as against the municipal Defendants and under the ADA and Rehabilitation Act.  Defendants' Memorandum at 24-25.  In opposition, Plaintiff does not oppose the dismissal of the requests for deprivation of companionship, loss of consortium, or injunctive relief, nor does Plaintiff dispute that punitive damages are not

available under the ADA and the Rehabilitation Act, but maintains punitive damages are recoverable as against the individual Defendants. Plaintiff's Response at 18. In further support of dismissal of the request for punitive damages against the individual Defendants, Defendants argue that the only individual Defendant against whom any allegations are made in the Complaint is Kruszynski, and those allegations are too conclusory and speculative to support a punitive damages award. Defendants' Reply at 9. Because the parties dispute only the damages issue, the court's consideration is limited to that issue.

"Because the standard for imposing punitive damages is a strict one and punitive damages will be awarded only in exceptional cases, the conduct justifying such an award must manifest 'spite or malice, or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interest of others that the conduct may be called willful or wanton.'" *Marinaccio v. Town of Clarence*, 986 N.E.2d 903, 906 (N.Y. 2013) (quoting *Dupree v. Giugliano*, 982 N.E.2d 74, 76 (N.Y. 1974)). "'Punitive damages may be awarded for conduct that represents a high degree of immorality and shows such wanton dishonesty as to imply a criminal indifference to civil obligations.'" *Id.* In the instant case, the paucity of factual allegations against any Defendant, including Kruszynski, fails to state a claim for punitive damages.

Defendants' Motion should be GRANTED insofar as Plaintiff requests damages for deprivation of companionship and loss of consortium, injunctive relief, damages under the ADA and the Rehabilitation Act, and punitive damages.

### D.    Leave to Amend

In the event any claims are dismissed, Plaintiff requests leave to file an amended complaint to cure any pleading deficiencies in the Complaint.  Plaintiff's Response at 1. Defendants argue the dismissal of any claims should be with prejudice.  Defendants' Reply at 9-10.

Generally, a complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Shabazz v. Bezio*, 511 Fed.Appx. 28, 31 (2d Cir. 2013) (*pro se* plaintiff).  Nevertheless, "[a] plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies."  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citing *City of Pontiac Policemen's & Firemen's Retirement System v. UBS AG*, 752 F.3d 173, 188 n. 71 (2d Cir. 2014) (denying leave to amend where 'plaintiffs have identified no additional facts or legal theories – either on appeal or to the District Court – they might assert if given leave to amend.")).  In the instant case, Plaintiff has not provided any formal argument in support of her request for leave to file an amended complaint, and a plain review of the transcript from Plaintiff's 50-h hearing[13] fails to indicate any additional facts not included in the instant Complaint that could support some plausible claim against Defendant Principal Kruszynski, the only Defendant Plaintiff mentions as having any involvement with J.P. relevant to this action.

---

[13] Although the court is not relying on the hearing transcript in considering Defendants' motion to dismiss, the court has relied on the hearing transcript in determining whether there is any indication that Plaintiff could sufficiently allege any plausible claim pertaining to J.P.'s death.

In particular, at the 50-h hearing, Plaintiff described the event leading up to J.P.'s unfortunate suicide on May 6, 2016.  According to Plaintiff, J.P. "never got in trouble in school," and had been academically classified as "special needs" since kindergarten, Hearing Tr. at 13, and received educational instruction pursuant to an individualized education plan ("IEP") for the rest of his school years.  *Id.* at 15-17.  Plaintiff described her son's grades as "improving" and "almost on honor roll."  *Id.* at 19.  According to Plaintiff, J.P. also enjoyed playing sports, including football and hockey, *id.* at 20-21, and had several friends.  *Id.* at 21-23.  Plaintiff also described two episodes of discipline meted out by Kruszynski in March and May 2016.

With regard to the first incident in March 2016, J.P. received three days of in-school suspension for three incidents in which J.P., who always wore shorts, was accused by three female students in J.P.'s reading class, of pulling up his shorts so as to expose himself to the students.  *Id.* at 23-25.  According to Plaintiff, Kuszynski telephoned Plaintiff the day J.P. was accused of the conduct and advised J.P. had been placed in in-school suspension for the remainder of that day, and for the following two days.  *Id.* at 25.  Plaintiff maintained she was upset by the telephone call and questioned why Kruszynski had waited until then to notify her of the situation, when the incidents allegedly occurred in October, January and March, and also queried why Kruszynski believed the accusers over J.P.  *Id.* at 25-26.  Plaintiff stated J.P., in a text message, denied the accusations, described J.P. as arriving home that day in tears, and when Plaintiff and her husband, J.P.'s father, spoke with J.P., J.P. continued to deny the accusations, explaining he usually sat in the reading room with his foot on the table and was unaware he was exposing himself to the accusers who sat on a couch at

a lower level.  *Id.* at 26-28.  J.P. and her husband assured J.P. they believed him, and

the three agreed J.P. would serve the rest of the suspension given that J.P. was about

to start high school in a new school in just a few months, but would transfer out of the

reading class, which Plaintiff subsequently arranged through the School.  *Id.* at 28-31.

J.P. was not further punished at home for the incident and appeared to Plaintiff to act

his usual self.  *Id.* at 33.

After the March 2016 disciplinary incident, J.P. appeared happy because his

hockey team was doing well, and J.P. was involved in no further discipline incidents

until May 6, 2016.  Hearing Tr. at 31-33.  On May 6, 2016, Plaintiff received a telephone

call from Defendant Kruszynski advising a girl whom J.P. had dated for three days in

February 2016, had "sexted" J.P. a picture of her bare buttocks ("the picture"), which

J.P. subsequently forwarded to others, with the picture eventually circulating among

students at Lancaster Middle School, Lancaster High School, and schools in Depew.

*Id.* at 33-35.  The girl complained to Principal Kruszynski, who called J.P. to his office

where a Lancaster police resource officer ("the resource officer").  *Id.* at 35-36.  J.P.

admitted to having the picture on his cellular phone, which the resource officer then

searched, finding and deleting the picture, and also finding pictures of other girls[14]

hidden behind an "app."  *Id.* at 36.  Kruszynski advised Plaintiff J.P. was receiving three-

days in in-school suspension, with Plaintiff responding "the hell you're not," and

inquiring "why don't you call Dr. Phil on that girl and her parents. . . . don't punish my

son, he didn't do anything wrong. . . . "  *Id.*  Plaintiff maintains Kruszynski yelled and her,

and Plaintiff then informed she intended to contact her husband and meet with

---

[14] None of the girls depicted in the other pictures were students at the School.

Kruszynski within an hour.  *Id.* at 37.  When asked whether she believed it was

inappropriate for J.P. to be punished for sharing the picture with other students, Plaintiff

responded she should have been contacted before the resource officer searched J.P.'s

cell phone, and questioned why the resource officer was even involved.  *Id.* at 37-38.

When Plaintiff and her husband met with Kruszynski at the school, Kruszynski repeated

the story to Plaintiff's husband, and explained that the decision to discipline J.P. was in

accordance with "the manual."  *Id.* at 39.  J.P. was called to the office, sat day with his

head down, admitted to the offense, asked to leave, and then returned to the in-school

suspension room.  *Id.* at 40.  Plaintiff and her husband protested that the discipline was

too harsh and that J.P.'s learning disabilities should have been considered prior to

imposing the discipline, and Kruszynski explained that J.P. was only given in-school

suspension because of his central auditory processing disability, and that otherwise,

more severe discipline would have been imposed.  *Id.* at 40-41.  In the balance of the

50-h hearing, Plaintiff describes the last few hours of J.P.'s life as normal, with J.P.

arriving home from school, going outside to shoot hockey pucks with neighboring

children, eating dinner with his mother and sister, lifting some weights, and then

returning outside to shoot more hockey pucks, as well as the horrific discovery of J.P.

after his suicide.  *Id.* at 43-62.  Plaintiff also admits that she never met with the school

resource officer was unaware of any harassing statements or threats made to J.P. by

the resource officer, and was not certain it was the resource officer who deleted the

pictures from J.P.'s phone, *id.* at 66-67, and Plaintiff was not aware that any police

report was ever prepared regarding the incident.  *Id.* at 67-68.  Plaintiff also was

unaware whether she received a copy of the School's policy or handbook for the 2015-

2016 school year, and was unaware of the School's policy regarding students having cell phones in the School.  *Id.* at 68-69.

A careful review of the Hearing Transcript fails to establish Plaintiff had any first-hand knowledge of any conduct by Kruszynski that could plausible support any due process or equal protection claim under the United States or New York Constitutions, New York Civil Rights claim, or any negligence, gross negligence, wrongful death, or infliction of emotional distress claims.  There are no assertions that J.P. was subjected to any bullying by peers or School staff or faculty.  None of Plaintiff's statements even hints that J.P. was depressed, much less suicidal but, to the contrary, only that J.P.'s academic performance was improving, J.P. had numerous friends at school, on his sports teams, and in the neighborhood, and J.P. was happy and excited about his hockey team and looking forward to the next season.  Nor is there any indication that Kruszynski failed to follow any School policy or protocol in disciplining J.P. in connection with either event.  The Hearing Transcript is also devoid of facts that could plausibly establish J.P. was subjected to unwarranted discipline or any other actions because of his learning disability as required to support an ADA or Rehabilitation Act claim. Plaintiff's statements that she and her husband believed J.P.'s assertion that he did not purposefully expose himself for the incident that resulted in the March 2016 discipline, and concurred that the May 6, 2016 discipline was too harsh, only supports that J.P. did not fear further punishment from his parents, undermining any possible claim that Kruszynski should have anticipated the May 6, 2016 punishment created a dangerous home situation for J.P.  Nor is there any other document in the record even hinting at how Plaintiff could cure the deficiencies in the instant Complaint so as to avoid

dismissal with prejudice. *TechnoMarine SA*, 758 F.3d at 505 (no leave to amend where plaintiffs failed to identify any additional facts or legal theories to be asserted if granted leave to amend).

Accordingly, the recommendation that all the claims be dismissed is with prejudice and without leave to replead.

## **CONCLUSION**

Based on the foregoing, Defendants' Motion (Dkt. 4), should be GRANTED, and the Complaint should be DISMISSED as to all Defendants, with prejudice and without leave to amend.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    March 21st, 2018
          Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 21st, 2018
            Buffalo, New York