UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DENISE PIECHOWICZ, *individually and
as Administratrix of the Estate of J.P.,
deceased*,

          Plaintiff,

    v.

LANCASTER CENTRAL SCHOOL
DISTRICT, *et al.*,

        Defendants.

17-CV-845-LJV-LGF
DECISION & ORDER

---

This case concerns the tragic suicide of J.P., a special-education student at

Lancaster Central Middle School.  The plaintiff, Denise Piechowicz, is J.P.'s mother and

the adminstratrix of his estate.  Piechowicz alleges that the remaining defendants in this

case, Principal Peter Kruszynski and the Lancaster Central School District, violated

federal and state law by initiating and conducting a disciplinary investigation that

ultimately led to J.P.'s suicide.[1]  *See* Docket Item 25.

Piechowicz initially filed a complaint in New York State Supreme Court, Erie

County, asserting claims under 42 U.S.C. § 1983, the Americans with Disabilities Act

("ADA"), the Rehabilitation Act, and New York State law.  Docket Item 1-1.  On August

28, 2017, the defendants removed the case to this Court.  Docket Item 1.  That same

---

[1] Piechowicz originally sued Kruszynski, the Lancaster Central School District, the Lancaster Board of Education, and various Lancaster Central School District employees and Lancaster Central School District Board of Education members.  *See* Docket Item 1-1.  All defendants except Kruszynski and the Lancaster Central School District were dismissed in this Court's prior decision.  *See* Docket Item 24.

day, the defendants moved to dismiss the complaint.  Docket Item 4.  On November 13, 2017, Piechowicz responded to the defendants' motion to dismiss, Docket Item 11, and on November 29, 2017, the defendants replied, Docket Item 12.

In the meantime, on September 8, 2017, this Court referred this case to United States Magistrate Judge Leslie G. Foschio for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).  Docket Item 5.  On March 21, 2018, Judge Foschio issued a Report and Recommendation ("first R&R") finding that the defendants' motion should be granted and that the complaint should be dismissed without leave to amend.  Docket Item 13.

On April 10, 2018, Piechowicz objected to the first R&R, arguing that the state pleading standard should apply to a removed action, and that even if the federal pleading standard applied, her claims cleared that hurdle.  Docket Item 16.  On April 30, 2018, the defendants responded to Piechowicz's objection, Docket Item 19, and Piechowicz replied on May 14, 2018, Docket Item 20.  This Court heard oral argument on the plaintiff's objection on November 13, 2019.  Docket Item 23.

On December 2, 2019, this Court issued a decision and order granting in part and denying in part the motion to dismiss.  Docket Item 24.  More specifically, the Court found that Piechowicz's federal claims were not viable as pleaded but granted her leave to amend her federal claims against Kruszynski and the Lancaster Central School District.  *Id.*  The Court concluded that "amendment would be futile as to the remaining defendants," however, and dismissed them from the case.  *Id.* at 6 n.2.

About a month later, Piechowicz filed an amended complaint.  Docket Item 25. On February 19, 2020, the remaining defendants renewed their motion to dismiss.

Docket Item 30.  On March 30, 2020, Piechowicz responded, Docket Item 32, and on April 13, 2020, the defendants replied, Docket Item 35.

On January 18, 2022, Judge Foschio issued a second R&R, again finding that Piechowicz's federal claims were not viable.  Docket Item 36.  Judge Foschio further recommended that this Court should decline to exercise supplemental jurisdiction over Piechowicz's state law claims if it agreed that her federal claims could not proceed.  *Id.* Both sides filed objections to the second R&R; each side then responded to each other's objections and replied in further support of their own objections.  *See* Docket Items 37, 38, 40-43.

On July 13, 2022, this Court heard oral argument on the objections and ordered supplemental briefing.  Docket Item 46.  The parties filed supplemental briefs on July 27, 2022, Docket Items 47 and 48, and each side responded to each other's brief on August 3, 2022, Docket Items 49 and 50.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.[2]  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully reviewed the thorough second R&R; the record in this case; the objections, responses, and replies; the post-argument briefs and responses;

---

[2]  The defendants argue that this Court should review Judge Foschio's second R&R for clear error because "[w]ith only minor changes to account for the current procedural posture, the plaintiff's objections are almost entirely a cut-and-paste repetition of the arguments she made before Magistrate Judge Foschio."  Docket Item 40 at 4.  Because this Court agrees with Judge Foschio's recommendations regardless of the standard of review, it makes no difference whether the second R&R is reviewed *de novo* or only for clear error.

and the pleadings and materials submitted by the parties.  Based on that *de novo*
review, this Court accepts and adopts Judge Foschio's recommendations in the second
R&R.  Piechowicz's federal claims are dismissed.  This Court declines to exercise
supplemental jurisdiction over Piechowicz's remaining state law claims and remands
those claims to state court.

## DISCUSSION[3]

### I.   SECTION 1983 CLAIMS

#### A.   Fourteenth Amendment

##### 1.   Substantive Due Process

In her amended complaint, Piechowicz renews her claim that the defendants'
conduct violated the substantive due process protections of the Fourteenth Amendment.
*See, e.g.*, Docket Item 25 at ¶ 86 (alleging that the defendants "had a special
relationship [to J.P.] whereby [they] had a constitutional duty to protect [him]" and that
the defendants "exposed J.P. to danger").  To state a substantive due process claim
based on a failure to protect, a plaintiff must demonstrate either that there was a
"special relationship" between her and the defendant or that a "state-created danger"
injured her.  *See Matican v. City of New York*, 524 F.3d 151, 155-58 (2d Cir. 2008)
(citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)).  The
plaintiff also must allege extreme and outrageous conduct that "shock[s] the
contemporary conscience."  *Id.* at 155.

---

[3] The Court assumes the reader's familiarity with the facts alleged in the
amended complaint, *see* Docket Item 25, and Judge Foschio's analysis in the second
R&R, *see* Docket Item 36.

This Court previously concluded that, "[a]ccepting [the complaint's] allegations as true, . . . a reasonable jury could deem the principal's actions"—which allegedly included "ma[king] false statements"; "harass[ing], bull[ying], and intimidat[ing] J.P."; and "secur[ing the] participation of a police officer with the sole purpose of improperly intimidating and harassing J.P."—to be the sort of extreme and outrageous conduct that would shock the contemporary conscience. Docket Item 24 at 6. But this Court also found that "[w]hether these allegations plausibly satisf[ied] the state-created danger exception" was "a closer question." *Id*. at 7. More specifically, the Court questioned "whether the complaint plausibly allege[d] that Kruszynski knew or should have known that he was putting J.P. at risk of suicide" through the disciplinary investigation. *Id*. This Court declined to "definitively decide" that issue, however, and instead gave Piechowicz leave to amend her substantive due process claim. *Id*. The time has now come to tackle that question.[4]

---

[4] The question of whether behavior is conscience-shocking is intertwined with the question of whether the state actor knew or should have known that his or her actions were creating a risk. More specifically, "[i]n situations in which time for deliberation is available to the official, [courts] apply a 'deliberate indifference' standard" to determine whether behavior shocks the conscience. *Spring v. Allegany-Limestone Cent. Sch. Dist.*, 655 F. App'x 25, 28 (2d Cir. 2016) (summary order) (quoting *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 432 (2d Cir. 2009)). Deliberate indifference "requires demonstration of a 'willful disregard' of the 'obvious risks,' 'serious implications,' and 'likelihood' of harm." *Id*. (quoting *Okin*, 577 F.3d at 432). So this Court may have put the cart before the horse in its prior decision by finding that the allegations in the complaint could be deemed conscience-shocking without deciding the question of whether the defendants reasonably knew of the risk of harm to J.P. What this Court should have said—and now clarifies—is that those allegations *could* be deemed conscience-shocking *if* there are sufficient facts to determine that school officials had that knowledge. It is that latter inquiry that this Court now resolves.

As Judge Foschio observed, "[i]t is only in a 'rare case' that 'the state-created danger exception might apply to a situation where the victim committed suicide.'"[5] Docket Item 36 at 30 (quoting *Nichols v. Livingston County*, 2019 WL 3935998, at \*7 (W.D.N.Y. Aug. 20, 2019)); *see also Briggs v. County of Monroe*, 293 F. Supp. 3d 379, 390 (W.D.N.Y. 2018) (concluding that "this is not the rare case in which the state-created danger exception might apply to a situation where the victim committed suicide"). In the words of the Sixth Circuit,

> [t]he rarity of *DeShaney* liability for suicides can be partially attributed to the high standard of proof in state-created-danger cases, but it is also uniquely difficult to assign constitutional liability to the government when the non-custodial victim harms himself. As a general principle, people cannot violate their own constitutional rights, and where a person makes a free and affirmative choice to end his life, the responsibility for his actions remains with him.

*Cutlip v. City of Toledo*, 488 F. App'x 107, 116 (6th Cir. 2012).

An example of such a "rare case" is *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253 (10th Cir. 1998). There, the Tenth Circuit affirmed the district court's denial of summary judgment on a substantive due process claim arising out of a special-education student's suicide, finding that the school may have created a dangerous condition by suspending a student who had previously threatened suicide and leaving him alone at his home where school officials knew that he had access to firearms. *Id.* at 1263-64. Likewise, in *Sloane v. Kanawha County Sheriff Department*, 342 F. Supp. 2d

---

[5] Judge Foschio also found that Piechowicz had not stated a viable substantive due process claim on the basis of a special relationship between J.P. and the defendants. Docket Item 36 at 28-29. Piechowicz did not object to that finding, *see generally* Docket Item 38, so this Court need not review Judge Foschio's conclusion on that question, *see Thomas v. Arn*, 474 U.S. 140, 149-50 (1985). In any event, this Court agrees with Judge Foschio that Piechowicz has not adequately alleged a special relationship here.

545 (S.D.W. Va. 2004), the court declined to dismiss the plaintiff's state-created danger claim where law enforcement officers "*knew* that [a teenager's] emotional difficulties were such that their conduct would increase the risk that he would harm himself," but nonetheless repeatedly "question[ed him] in an abusive manner outside his grandparents' presence." *Id.* at 552 (emphasis added).  Indeed, one of the officers in that case "stated that he was worried that [the teenager] might feel 'he was up against a wall' and *become suicidal*" but still continued the interrogation. *Id.* at 548 (emphasis added).

By contrast, in cases where there appears to have been no indication that the student was at a particular risk of committing suicide, courts have dismissed state-created danger claims, even when the plaintiff alleged that the school's disciplinary action caused the suicide. *See, e.g.*, *Hasenfus v. LaJeunesse*, 175 F.3d 68, 71-74 (1st Cir. 1999) (affirming dismissal of substantive due process claim when student attempted suicide in school locker room after being reprimanded by gym teacher in front of other students and sent to the locker room unsupervised); *Walgren v. Heun*, 2019 WL 265094, at *7-9 (N.D. Ill. Jan. 17, 2019) (dismissing substantive due process claim that was based on allegations that teenage student committed suicide shortly after school deans and a police detective interrogated him without his parents present and without *Miranda* warnings, falsely accusing him of possessing and disseminating child pornography); *see also Jahn v. Farnsworth*, 617 F. App'x 453, 463-64 (6th Cir. 2015) (affirming grant of summary judgment dismissing substantive due process claim based on student's suicide after defendants interrogated, threatened, and suspended him); *Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 708-12 (7th Cir. 2002) (affirming

grant of summary judgment dismissing substantive due process claim where plaintiffs alleged that "the defendants either created the risk that [the student] would commit suicide, or rendered [her] more vulnerable to the risk of suicide by suspending her from school").  So the case law establishes that a substantive due process claim based on the alleged state-created danger of student suicide is viable only when the school knew or had reason to know that the student was at risk of harming himself or herself.

Two of those cases cited above, *Sloane* and *Walgren*, are strikingly similar to this case, and the differences between them informs the analysis here.  In both of those cases, "the defendants made serious accusations against the minor, told him he was a rapist who was a danger to reoffend, and implicitly threatened him with being charged with a crime and losing his freedom."  *Walgren*, 2019 WL 265094, at *8 (citing *Sloane*, 342 F. Supp. 2d at 548).  But the court in *Walgren* concluded that *Sloane* "[was] distinguishable primarily because the defendants [in *Sloane*] knew that the minor was emotionally troubled, and at least one of the defendants recognized the effect of the interrogation on the minor's psyche when he expressed concern that the minor may become suicidal but continued interrogating him anyway."  *Id.* (citing *Sloane*, 342 F. Supp. 2d at 548, 550, 552).  And in contrast to the facts of *Walgren*, "where [the minor] was interrogated only once, the minor in *Sloane* was interrogated three times and was even subject to a polygraph test during one interrogation."  *Id.* (citing *Sloane*, 342 F. Supp. 2d at 548).  So in *Sloane*, the plaintiff's substantive due process claim survived a motion to dismiss under Rule 12(b)(6); in *Walgren*, it did not.

In the amended complaint, Piechowicz alleges that the Kruszynski "improperly and negligently interrogated J.P.," "secur[ed the] participation of a police officer with the

sole purpose of improperly intimidating and harassing J.P.," and "accus[ed] J.P. of criminal conduct, including, but not limited to, falsely accusing J.P. of the criminal possession, promotion, or distribution of child pornography."  Docket Item 25 at ¶ 25.[6] But nothing in the amended complaint suggests that school officials knew or should have known that J.P. was *at risk of suicide* because of that conduct.  On the contrary— as Piechowicz explained in her 50-h testimony, which she incorporated by reference in her amended complaint, *see id.* at ¶ 8—J.P. had never been "treated" or "prescribed any medication" for any psychological issues, *see* Docket Item 25-1 at 12.   Piechowicz also disclaimed "any knowledge" of J.P. "having been bullied or mistreated by any other student at [] school." *Id.* at 57.  In fact, Piechowicz testified that J.P.'s "academic performance" was "[i]mproving" and that, outside school, J.P. was "excited" about his hockey team and "very happy" about the team's prospects.  *See id.* at 19, 32-33.  That testimony, when coupled with the absence of any further allegations in the amended complaint, does not suffice to suggest the defendants' awareness of a risk that J.P. would harm himself.

Piechowicz relies heavily on the fact that J.P. was a special-education student with an auditory processing disorder.  More specifically, Piechowicz alleges that Kruszynski "knew or should have known that the May 6, 2016[] interrogation could not be comprehended by J.P." because Kruszynski "was aware of J.P.'s disability[] and the

---

[6] As Judge Foschio observed, some of these allegations are undermined by Piechowicz's 50-h testimony.  *See* Docket Item 36 at 6-7 (explaining that a female student reported that J.P. had shown a nude picture of her to another student on the bus, that J.P. admitted having such a picture, and that the principal and police officer found that photo on J.P.'s cell phone and additional photos of girls in a "hidden app" (citing Docket Item 25-1 at 35-36)).

effect that [his] auditory processing disorder" had on J.P.'s ability to "comprehend the interrogation."  Docket Item 25 at ¶ 26; *see also id.* at ¶¶ 51 ("The defendants knew or should have known that J.P.'s auditory processing disorder rendered [him] incapable of comprehending verbal information in the same manner that a non-disabled student would, leading [him] to be confused and more sensitive to verbal information and more likely to be intimidated by verbal confrontation."), 52 ("Kruszynski and the Lancaster Central School District knew or should have known that J.P. was confused by and exceptionally intimidated by verbal reprimand[s], which he was incapable of fully understanding, creating a risk of harm to J.P."); Docket Item 38 at 7 ("The facts as pleaded in the Amended Complaint show that J.P.['s] Central Auditory Processing Disorder [] impaired his ability to comprehend verbal instruction and verbal discipline in a way that a non-disabled person would" and that this disability was "well-known to Principal Kruszynski." (capitalization removed)).  And Piechowicz says that Kruszynski, despite his knowledge of J.P.'s auditory processing disorder, "nevertheless intentionally continued to interrogate and [] bully . . . J.P."  Docket Item 25 at ¶ 26.

In other words, Piechowicz alleges that J.P. could not process information in the same way that other students could because of his auditory processing disorder.  And Piechowicz then urges this Court to infer that because J.P. may not have understood information as well as other students, he was at higher risk of self-harm.

But there is no basis—in the amended complaint or in Piechowicz's 50-h testimony—to make that logical leap.  And that is precisely the type of speculation that does not suffice to withstand a motion to dismiss under Rule 12(b)(6).  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that the "[f]actual allegations" in

a complaint "must be enough to raise a right to relief above the speculative level").

Indeed, as the defendants observe, to conclude that the school should have known of

J.P.'s risk of suicide in this case "would reduce the state-created danger exception to

near nothingness in cases involving allegedly disabled students."  Docket Item 40 at 7.

So without some indication of how school officials knew or should have known of J.P.'s

risk of suicide, this case is more similar to *Walgren* than *Sloane*, and Piechowicz's

substantive due process claim therefore fails.

In reaching this decision, this Court does not minimize this tragedy or the pain

and suffering that these events have caused J.P.'s family.  On the contrary, the

circumstances of this case have made this decision an exceedingly difficult one.  But

this Court must be mindful "to take care, for the general good of the community, that

hard cases do not make bad law."  *United States v. Clark,* 96 U.S. 37, 49 (1877)

(Harlan, J., dissenting).  In this case, that means looking at the facts available to the

defendants at the time of the events—not in hindsight, viewed through the lens of the

tragedy that occurred.  And for all the reasons stated above, those facts do not clear the

"high bar" for any substantive due process claim based on J.P.'s suicide.[7]  *See Hirsch v.*

*New York*, 751 F. App'x 111, 115 (2d Cir. 2018) (summary order).

---

[7] The Court notes that it decides only that Piechowicz's federal substantive due
process claim may not proceed; it makes no comment on the validity of any of her state
law claims.  *See Hasenfus*, 175 F.3d at 74 (explaining that "the due process clause is
not a surrogate for local tort law or state statutory and administrative remedies").  As
explained below, that is a question best left to the state courts.

### 2.   Procedural Due Process

In addition to a substantive due process claim, Piechowicz also renews her procedural due process claim in the amended complaint.  *See, e.g.*, Docket Item 25 at ¶¶ 23, 88.  The Second Circuit has held that when a procedural due process claim is "based on random, unauthorized acts by state employees . . ., the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post[-]deprivation remedy."  *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996).  And as relevant here, "[s]tudents in New York schools . . . have frequently sought relief from disciplinary action through an Article 78 hearing."  *J.F. v. Carmel Cent. Sch. Dist.*, 168 F. Supp. 3d 609, 620 (S.D.N.Y. 2016) (quoting *Attallah v. N.Y. Coll. of Osteopathic Med.*, 94 F. Supp. 3d 448, 455 (E.D.N.Y. 2015), *aff'd*, 643 F. App'x 7 (2d Cir. 2016)).

This Court previously declined to dismiss Piechowicz's due process claim, as originally pleaded, based on *J.F.*  Docket Item 24 at 7-8.  That was because the court in *J.F.* "acknowledged that it was 'unaware of any cases concerning the availability of an Article 78 proceeding to review a school official's justification for searching a student on school premises.'"  *Id.* at 7 (quoting *J.F.*, 168 F. Supp. 3d at 620).  And this Court initially concluded that *J.F.* was distinguishable because it was "decided on summary judgment, not a motion to dismiss, and did not involve a student who had committed suicide."  *Id.* at 8.  But because Piechowicz's procedural due process claim did not "meet the federal pleading standard," this Court gave Piechowicz leave to amend her complaint to state a viable procedural due process claim.  *See id.*

The defendants now argue, as they did in their original motion to dismiss, that Piechowicz's procedural due process claim should be dismissed because an Article 78 proceeding provided a sufficient post-deprivation remedy.  *See* Docket Item 40 at 9-12. As the defendants helpfully clarify, "this case is relatively unusual because, like the plaintiff in *J.F.*, the plaintiff is attempting to classify an allegedly unlawful search as a procedural due process violation rather than a Fourth Amendment violation."  Docket Item 40 at 9 (citing *J.F.*, 168 F. Supp. 3d at 618-19).  And the defendants suggest that "[t]his oddity was most likely why the Court in *J.F.* stated that [it] was 'unaware of any [similar] cases'" evaluating whether the availability of an Article 78 proceeding was relevant to a challenged search of a student.  *Id.* (citing *J.F.*, 168 F. Supp. 3d at 620). Indeed, the court in *J.F.* noted that the plaintiffs conceivably could have "challenge[d] the validity of the search" itself but elected to bring a Fourteenth Amendment claim instead.  *J.F.*, 168 F. Supp. 3d at 618.  In other words, the court in *J.F.* seemed to recognize that the plaintiffs were trying to fit a square peg in a round hole by recasting a potential Fourth Amendment claim as a Fourteenth Amendment claim.

That mismatch presented a challenge when this Court evaluated Piechowicz's procedural due process claim the first time around.  In original complaint, it was not exactly clear whether Piechowicz alleged that the due process violation here was the result of the search of J.P., J.P.'s suspension, or something else.  And without additional factual allegations that could clarify what exactly the claimed deprivation was, this Court could not find that an Article 78 proceeding would be a meaningful post-deprivation remedy.  *See* Docket Item 24 at 7-8.

In her amended complaint, Piechowicz now alleges that "J.P. was not afforded a hearing or the minimal due process to which he was entitled either before or after a March 2016 suspension."  Docket Item 25 at ¶ 23.  And she further alleges that "Principal Kruszynski and other agents of the Lancaster School District searched J.P.'s telephone without obtaining a warrant, without reasonable suspicion, and without any basis or exception to the warrant requirement."  *Id.* at ¶ 44.  In other words, Piechowicz apparently now brings a procedural due process claim based on J.P.'s suspension and a Fourth Amendment claim based on the search.

The Court addresses the Fourth Amendment claim below.  As for the procedural due process claim, the Court agrees with Judge Foschio that, based on Second Circuit case law, an Article 78 proceeding provides an adequate post-deprivation remedy for a wrongful suspension "even though the petitioner may not be able to recover the same relief that he could in a [section] 1983 suit."  Docket Item 36 at 37 (quoting *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 880); *see also Attallah,* 94 F. Supp. 3d at 456 (noting that "numerous federal and state cases in which claims identical to plaintiff's—complaining that officials expelled or suspended the plaintiff from a private or public school arbitrarily and capriciously, and/or in bad faith, and/or in violation of their own disciplinary code—have been capably reviewed by courts in Article 78 proceedings").  And in light of that post-deprivation remedy, Piechowicz's procedural due process claim is not viable.

### 3.    Equal Protection

Judge Foschio also recommended dismissing Piechowicz's Fourteenth Amendment equal protection claim.  *See* Docket Item 36 at 22-25.  Piechowicz did not

object to that recommendation, *see* Docket Item 38, and this Court therefore need not review it, *see Thomas*, 474 U.S. at 149-50.  Nevertheless, this Court has reviewed Judge Foschio's analysis of Piechowicz's equal protection claim.  Based on that review and the absence of any objections, the Court accepts and adopts Judge Foschio's recommendation to dismiss that claim.

### B.    Fourth Amendment

As Judge Foschio explained, the Supreme Court's decision in *New Jersey v. T.L.O.*, 469 U.S. 325 (1985), lays out the framework for analyzing the constitutionality of public school searches.  *See* Docket Item 36 at 40-41.  That analysis consists of a two-step inquiry: "first, [the court] must consider 'whether the action was justified at its inception'; second, [the court] must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place.'"  *T.L.O.*, 469 U.S. at 341 (citations omitted) (quoting *Terry v. Ohio,* 392 U.S. 1, 20 (1968)).  "Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school."  *Id.* at 341-42.  And "[s]uch a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction."  *Id.* at 342.

Judge Foschio found that "the May 6, 2016[] seizure of J.P. and the search of his cell phone, as alleged by [the p]laintiff, were justified at their inceptions based on the complaint by a female student, whom Kruszynski believed credible, that J.P. had on his

cell phone a picture of the complaining student's nude backside."  Docket Item 36 at 41.

Judge Foschio further explained that both Piechowicz and J.P. conceded that "J.P. [had

been] sharing [the picture] with other students."  *Id.* (citing Docket Item 25-1 at 36).  And

Judge Foschio found that the second step of the *T.L.O.* inquiry was satisfied because

"the scope of the search and seizure was limited to the student's complaint," as "J.P.'s

cell phone was searched only with regard to the image[] and J.P. was held only

because of the complaint."  *Id.*  Because Judge Foschio concluded that the search was

permissible under *T.L.O.*, he therefore recommended dismissing Piechowicz's Fourth

Amendment claim.  *Id.*

In her objection, Piechowicz does not argue that Judge Foschio erred in his

analysis under *T.L.O.*; instead, she urges this Court to rely on *Riley v. California*, 573

U.S. 373 (2014), to find that the defendants "violated the Fourth Amendment in

conducting a warrantless search" of J.P.'s cell phone.  Docket Item 38 at 14.  But *Riley*

was not a school case, and Piechowicz gives no reason why this Court can or should

supplant *T.L.O.*'s school-specific inquiry with the constitutional requirements that might

apply outside a school's walls.  *See T.L.O.*, 469 U.S. at 340 (explaining that "the school

setting requires some easing of the restrictions to which searches by public authorities

are ordinarily subject").  Absent any other argument from Piechowicz as to why the

search here was unconstitutional under *T.L.O.*, this Court agrees with Judge Foschio

that Piechowicz's Fourth Amendment claim is not viable here.

### C.    Fifth Amendment

In her amended complaint and motion papers, Piechowicz argued that the

defendants' failure to give J.P. a *Miranda* warning violated the Fifth Amendment.  *See,*

*e.g.*, Docket Item 32 at 14 (arguing that "the illegal interrogation" that occurred without a *Miranda* warning "violated the Fifth Amendment"); *see generally Miranda v. Arizona*, 384 U.S. 436 (1966).  Judge Foschio concluded that Piechowicz had not adequately alleged a Fifth Amendment claim, *see* Docket Item 36 at 41-42, and Piechowicz objected to that finding, *see* Docket Item 38 at 16-19.

After Judge Foschio issued his second R&R, the Supreme Court held that "a violation of the *Miranda* rules" cannot "provide[] the basis for a claim under [section] 1983."  *See Vega v. Tekoh*, 142 S. Ct. 2095, 2101 (2022).  And at oral argument, Piechowicz confirmed that *Vega* foreclosed her section 1983 claim based on a *Miranda* violation.  In light of that, Piechowicz cannot state a viable claim under section 1983 for a violation of *Miranda* and her Fifth Amendment claim therefore is dismissed.

### D.   IDEA

Although Piechowicz's amended complaint does not include a separate cause of action under the IDEA, she contends that such a claim is cognizable under section 1983.  *See* Docket Item 38 at 5.  But any section 1983 claim predicated on an IDEA violation is dismissed for the reasons stated in the second R&R.  *See* Docket Item 36 at 18-20, 38.  More specifically, as the defendants note in their response to Piechowicz's objection, the IDEA provisions that Piechowicz maintains were violated in this case apply only "when a disabled student is given a change of placement that lasts more than ten days for behavior that was a manifestation of his disability."  Docket Item 40 at 15 (citing 20 U.S.C. § 1415(k)(1)(B), (C)).  And Judge Foschio correctly concluded that the IDEA's private cause of action does not apply here.  *See* Docket Item 36 at 38; *see*

17

*also* Docket Item 40 at 15 (collecting cases).  For those reasons, Piechowicz has failed

to state a viable claim based on a violation of the IDEA.

      **E.**    ***Monell* Liability**

      Judge Foschio concluded that Piechowicz's allegations against the Lancaster

Central School District could not provide a basis for liability under *Monell v. Department*

*of Social Services of City of New York*, 436 U.S. 658 (1978).[8]  *See* Docket Item 36 at

15-22.  In her objection, Piechowicz maintains that she has stated a viable *Monell* claim

because the Lancaster Central School District's "official [] policy and custom[] . . .

instructs those acting under the color of law, such as Principal Kruszynski, to violate

*Miranda*'s prophylactic protections[ and] to violate the IDEA."  Docket Item 38 at 14.

And Piechowicz maintains that the Lancaster Central School District's "policy conflicts

directly with what the U.S. Supreme Court held in *Riley*" and therefore violates the

Fourth Amendment.  *Id.* at 14-15.

      As explained above, the Supreme Court has now shut the door on any section

1983 claim based on a *Miranda* violation, and any IDEA claim is not viable.  And to the

extent that Piechowicz brings a *Monell* claim based on a policy or custom of

unconstitutional searches, that claim fails for the same reason her underlying Fourth

Amendment claim fails.  Finally, this Court also agrees with Judge Foschio that

---

[8] A municipal defendant—in this case, the Lancaster Central School District—
cannot be held liable under section 1983 unless the challenged action was undertaken
pursuant to a municipal policy or custom.  *See Monell*, 436 U.S. at 694.  To state a
claim under *Monell*, a plaintiff must plead three elements: "(1) an official policy or
custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional
right."  *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v.
Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Piechowicz's amended complaint does not "sufficiently allege [that the d]efendants acted pursuant to an informal policy of tolerating bullying and harassment that denied J.P. constitutional protections."  *See* Docket Item 36 at 20.  For all those reasons, and for the reasons stated in the second R&R, this Court agrees with Judge Foschio that Piechowicz has not stated a viable *Monell* claim.

## II.    ADA AND REHABILITATION ACT CLAIMS

In its prior decision and order, this Court agreed with Judge Foschio's finding that Piechowicz's claims under the ADA and the Rehabilitation Act were deficient.  *See* Docket Item 24 at 8.  In light of the higher pleading standard applicable in federal court, however, this Court granted Piechowicz leave to replead those claims.  *See id.*  This Court now concludes that nothing in the amended complaint alters this Court's earlier assessment, and accordingly accepts and adopts Judge Foschio's recommendation to dismiss Piechowicz's ADA and Rehabilitation Act claims for the reasons stated in the second R&R.  *See* Docket Item 36 at 42-45.

## III.   STATE LAW CLAIMS

For all the reasons stated above, none of Piechowicz's federal claims are viable.[9] Judge Foschio recommended that, if this Court dismissed all of Piechowicz's federal claims, it should "refrain from exercising supplemental jurisdiction over the state claims"

---

[9] Judge Foschio recommended dismissing Piechowicz's claims without further leave to amend.  *See* Docket Item 36 at 61-63.  In her objection, Piechowicz requests that this Court "grant [her] the opportunity to replead," *see* Docket Item 38 at 3, but she gives no indication of how the deficiencies outlined above could be cured in a second amended complaint.  In light of that, and in light of the fact that Piechowicz already has had the opportunity to amend her complaint to state viable federal claims, further leave to amend is denied.

because Piechowicz's "Tenth Claim asserting a violation of New York Civil Rights Law §

79-n presents a novel question of law not yet considered by New York courts" and this

case "remains at an early stage of the proceedings being before the court on a motion

to dismiss."  Docket Item 36 at 46.  The defendants object to that recommendation and

argue that this Court should "ret[ain] jurisdiction over the plaintiff's state law claims"

before "immediate[ly] dismiss[ing]" them, which they maintain "would promote the

interests of judicial economy, convenience, and fairness because [those] claims[] . . .

are patently meritless."  Docket Item 37 at 3.

A "district court[] may decline to exercise supplemental jurisdiction over a claim" if

"the district court has dismissed all claims over which it has original jurisdiction."  28

U.S.C. § 1367(c)(3).  "Once a district court's discretion is triggered under § 1367(c)(3), it

balances the traditional 'values of judicial economy, convenience, fairness, and comity[]'

in deciding whether to exercise jurisdiction."  *Kolari v. N.Y.-Presbyterian Hosp.*, 455

F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343,

350 (1988)).  "[I]n the usual case in which all federal[ ]law claims are eliminated before

trial, the balance of factors will point toward declining to exercise jurisdiction over the

remaining state[ ]law claims."  *Id.* (alterations omitted) (quoting *Cohill*, 484 U.S. at 350

n.7).

This Court agrees with Judge Foschio's recommendation to decline to exercise

supplemental jurisdiction over Piechowicz's state law claims.  This case is still at an

early stage, and this Court has not yet passed on the viability of any of Piechowicz's

state law claims.  *See* Docket Item 24 at 8 ("declin[ing] to address the viability of

plaintiff's state[ ]law claims against Principal Kruszynski and the District as currently

pleaded").  So judicial economy would not necessarily be served by retaining jurisdiction over those claims.

Moreover, Piechowicz initially chose to bring her claims in state court, which, as this Court discussed in its prior decision and order, has a less demanding pleading standard.  *See id.* at 5-6 (finding "that it would be fundamentally unfair to dismiss the plaintiff's claims against the District and Principal Kruszynski—which were pleaded under the state standard—without giving the plaintiff an opportunity to amend her complaint").  So the fairest course here is to decline to exercise supplemental jurisdiction over Piechowicz's state law claims and allow the state courts to consider those claims under the pleading standard that Piechowicz initially contemplated. Finally, there is no indication that considerations of convenience or comity would warrant retaining jurisdiction now.  In fact, Judge Foschio found that one of Piechowicz's claims raises questions of state law that "New York courts have not had much opportunity to consider."  *See* Docket Item 36 at 50.  So comity favors giving the state courts the first pass at addressing those issues.

For those reasons, this Court declines to exercise supplemental jurisdiction over Piechowicz's remaining state law claims and instead remands those claims to New York State Supreme Court, Erie County.

## **CONCLUSION**

For the reasons stated above and in the second R&R, the defendants' motion to dismiss, Docket Item 30, is GRANTED in part and DENIED in part.  Piechowicz's federal claims are dismissed.  This Court declines to exercise supplemental jurisdiction over her remaining state law claims and those claims are REMANDED to New York State Supreme Court, Erie County.  The Clerk of the Court shall close the case.


SO ORDERED.


Dated:       December 8, 2022
             Buffalo, New York


                                    _/s/ Lawrence J. Vilardo_____
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE